NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0188n.06
Filed: March 17, 2006

No. 04-2330

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KAREN ANN OUWENGA, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SUTTON and GRIFFIN, Circuit Judges; OBERDORFER, District Judge.[*]

PER CURIAM. A jury convicted Karen Ann Ouwenga of conspiring with her husband to defraud the government, of engaging in tax evasion and of contempt of court. For the reasons that follow, we affirm the convictions but vacate the sentence and remand for resentencing consistent with *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005).

I.

After filing joint income tax returns through 1993, Karen and Andrew Ouwenga stopped filing returns. They also let the corporate charters lapse for their jointly owned Tamarack Pines Estates mobile-home park and Andrew's business (Labakk Photography Studio). Mrs. Ouwenga

_____

[*] The Honorable Louis F. Oberdorfer, United States District Court Judge for the District of Columbia, sitting by designation.

became the manager or representative of multiple sham trusts, which used false tax information and false employer identification numbers as well as distant locations and alter egos to attempt to hide taxable income from the government. Despite repeated warnings from their financial advisers and the IRS that their activities were illegal, the Ouwengas continued not to pay their taxes.

On February 4, 2003, Karen Ouwenga was served with subpoenas requiring her to appear before a grand jury in Grand Rapids, Michigan, to answer questions about potential tax evasion. She did not appear and instead sent the subpoenas back to the court claiming that they evinced the "legal malice" of the grand jury. JA 294–95. On April 30, 2003, Chief Judge Bell ordered Mrs. Ouwenga to appear and to "show cause why she should not be found in civil contempt for her failure to comply" with the grand-jury subpoenas. JA 288. Again, Mrs. Ouwenga failed to appear and instead sent a letter co-signed by her husband, to the courthouse claiming that the order was "non-sense" and that the drafter should be disciplined. JA 296–99. On March 7, 2003, Karen Ouwenga was found in civil contempt and taken into custody.

On August 27, 2003, a grand jury indicted Mrs. Ouwenga for conspiracy to defraud the United States in violation 18 U.S.C. § 371 (count one), income tax evasion from 1997 through 2000 in violation of 26 U.S.C. § 7201 (counts two through five) and contempt of court in violation of 18 U.S.C. § 401 (counts six and seven). In the middle of a six-day trial, the government dismissed counts three through five. On May 27, 2004, the jury found her guilty of the remaining counts.

The district court sentenced Mrs. Ouwenga under the then-mandatory Guidelines to (1) 51 months on counts one and two, to be served concurrently, and (2) 12 months on counts six and seven, to be served concurrently with each other and with the 51-month sentence for counts one and two. Consistent with this court's en banc order in *United States v. Koch*, No. 02-6278, 2004 U.S. App. LEXIS 17640 (6th Cir. Aug. 13, 2004), the district court sentenced Mrs. Ouwenga to an alternative (concurrent) sentence of 24 months on counts one and two, to run concurrently with the 12-month sentence on counts six and seven.

## II.

### A.

Mrs. Ouwenga challenges her convictions on several grounds, first targeting the alleged insufficiency of the indictments. "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which [s]he must defend, and, second, enables [her] to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). In this case, each of the four counts lays out the elements of the offense such that Mrs. Ouwenga could not help but understand the charge presented.

"[T]he elements of a section 371 conspiracy to defraud are: (1) an agreement to accomplish an illegal objective against the United States; (2) one or more overt acts in furtherance of the illegal purpose; and (3) the intent to commit the substantive offense, *i.e.*, to defraud the United States."

*United States v. Douglas*, 398 F.3d 407, 413 (6th Cir. 2005). In count one, the government charges that Mrs. Ouwenga and her husband "did unlawfully, willfully, and knowingly conspire, combine, confederate and agree with each other and with other individuals . . . to defraud the United States by impeding, impairing, obstructing, and defeating lawful governmental functions of the Internal Revenue Service," JA 39, satisfying prongs one and three of the offense. Prong two is satisfied later in count one where the indictment says, "[d]uring and in furtherance of this conspiracy, at least one of the Defendants, committed at least one overt act, included in the following," JA 41, and goes on to list ten different overt acts taken by Mrs. Ouwenga or her husband in furtherance of the conspiracy, JA 41–44. The specificity of the charge not only put Mrs. Ouwenga on notice of the offense charged, but it also would have barred subsequent prosecution for the same offense. Counts two, six and seven are equally sufficient in their language, laying out each element of their respective offenses in terms clear enough to give notice to the defendant of the offense charged and to bar plural prosecutions for the same charge.

Mrs. Ouwenga raises other indictment-related challenges to her conviction. With regard to her claim that count one does not allege a specific object, it suffices to point to the language of the indictment, which states that the object of the conspiracy was to defraud the IRS of taxes owed during the relevant years. With regard to her claim that a charge of defrauding the federal government requires a specific violation of federal law, it suffices to note that evasion of taxes is indeed a violation of federal law, namely 26 U.S.C. § 7201. With regard to her claim that count one violates the statute of limitations, it suffices to point out that (1) Mrs. Ouwenga and her co-

conspirator husband established sham trusts in furtherance of the conspiracy within the five-year period before the indictment and (2) Mrs. Ouwenga, unlike her husband, never claimed the statute-of-limitations defense and therefore waived it.

Mrs. Ouwenga next argues that there was a fatal variance between the crime alleged in count two (tax evasion) and the proof offered at trial in support of the conviction on that count. *See United States v. Barrow*, 118 F.3d 482, 488 (6th Cir. 1997) ("A variance occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.") (internal quotation marks and brackets omitted). In pressing this argument, she points to the first paragraph of count two, which notes that the photography business had gross receipts of $499,478. Relying on this paragraph, she maintains that the evidence at trial demonstrated that she had no role in the business—and thus no duty to file a tax return with regard to these receipts—and that the evidence at most demonstrated that she was a part owner of the mobile-home park and liable for taxes on income from that business as well as on the capital gains from the sale of that business. Yet the balance of the indictment on this count charges Mrs. Ouwenga with "willfully attempt[ing] to evade and defeat a substantial portion of the income tax due and owing by [her] to the United States of America for calendar year 1997" and incorporates the affirmative acts found in count one, which among other things describe the mobile-home park as a source of Mrs. Ouwenga's income. JA 46. As the income from running the mobile-home park and capital gains from its sale constitute income upon which Mrs. Ouwenga owed taxes, there is no

variance between the indictment in count two and the proof offered at trial, even if we assume (as she alleges) that she received no income from the photography studio.

B.

When addressing the sufficiency of the evidence presented at trial, we will not disturb a verdict if "viewing the evidence in a light most favorable to the prosecution and giving the government the benefit of all inferences reasonably drawn from the testimony, a rational jury could find the elements of a crime beyond a reasonable doubt." *United States v. Sawyers*, 409 F.3d 732, 735 (6th Cir. 2005). The government satisfied this requirement.

With regard to count one, Mrs. Ouwenga claims that none of the overt acts was sufficient to demonstrate an agreement to violate the law. On the contrary, the evidence showed that: trusts were established with misleading and fraudulent identification information; corporate charters were allowed to lapse; and obligations to employees were shunted to a payroll service—all to the end of hiding the Ouwengas' income from the IRS. Between 1994 and the time of the indictment, Mrs. Ouwenga on some occasions filed frivolous tax returns, on other occasions filed no tax returns and on two occasions refused to abide by court orders to present evidence about her tax obligations. Evidence on each of these acts was presented to the jury. Viewed in the light most favorable to the prosecution, this evidence would allow a jury to conclude beyond a reasonable doubt that Mrs. Ouwenga conspired to defraud the government.

Mrs. Ouwenga responds that the establishment of the trusts cannot constitute tax evasion. But the government presented evidence that she and her husband established the trusts in distant locations, in names other than their own and with improper identifying numbers, all of which, unlike the properly named and identified trusts in *United States v. McGill*, 964 F.2d 222, 233 (3d Cir. 1992), constituted evidence of willful tax evasion.

Mrs. Ouwenga next contends that the government failed to present sufficient evidence to prove two elements of tax evasion—willfulness and affirmative act. An affirmative act of evasion, the Supreme Court has held, may be "inferred from conduct such as . . . concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal." *Spies v. United States*, 317 U.S. 492, 499 (1943). And this court has noted that while "maneuvering property through sham trusts . . . may constitute independent affirmative acts of evasion, that does not mean that these acts may not be used to establish circumstantial evidence of willfulness." *United States v. Christians*, Nos. 03-1529, 03-1530, 2004 U.S. App. LEXIS 15585, at *6 (6th Cir. July 26, 2004). Consistent with these cases, the government produced evidence of sham trusts, of acts taken to hide the origin and possession of income and of other acts "the likely effect of which would be to mislead or conceal." *Spies*, 317 U.S. at 499. A jury thus could rely on this evidence to establish beyond a reasonable doubt that Mrs. Ouwenga willfully evaded her tax obligations for the income from the operation and sale of the Tamarack Pines mobile-home park.

Mrs. Ouwenga next challenges the contempt convictions, arguing that the subpoenas issued by the grand jury were insufficient in several ways. That those subpoenas asked her to report to "room 301" rather than "courtroom 301" does not make out a cognizable challenge to the conviction. Nor does her complaint about who performed the mechanical task of filling out the subpoena in furtherance of the grand jury's instructions further her cause. Also unavailing is Mrs. Ouwenga's complaint that the grand-jury foreman should not have been allowed to testify before the petit jury; because the foreman did not testify about discussions of the grand jury, the district court did not abuse its discretion in allowing this testimony for the limited purpose of rebutting Mrs. Ouwenga's claim that the grand jury did not actually subpoena her. *See United States v. Johnson*, 414 F.2d 22, 26 (6th Cir. 1969). Mrs. Ouwenga also challenges the order to show cause issued by Chief Judge Bell, claiming that it was invalid because it did not state where in Grand Rapids Mrs. Ouwenga was to report in order to comply with the order. That Mrs. Ouwenga returned this same order to the location where she was required to report, the federal courthouse in Grand Rapids, underscores the illegitimacy of this argument. Both the show-cause order and the grand jury's subpoenas in the end were lawful court orders, and a reasonable jury could well conclude that Mrs. Ouwenga's willful resistance to them was proved beyond a reasonable doubt.

C.

Mrs. Ouwenga next challenges the legality of the prosecution in numerous ways, none of which is convincing. Mrs. Ouwenga claims that the defraud prong of 18 U.S.C. § 371 violates the rule of lenity because it has "no ascertainable meaning." Ouwenga Br. at 12. Beyond this phrase,

however, she offers no explanation as to what she means, to say nothing of making the argument without any supporting authority. It may be true that when "there is doubt whether the defendants' conduct is criminal, the rule of lenity requires that the doubt be resolved in favor of the accused." *United States v. Chandler*, 388 F.3d 796, 805 (11th Cir. 2004). But in this case the statute leaves no room for doubting the criminality of that conspiring to defraud the government by taking steps to evade a duty to pay taxes. *See Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924) ("To conspire to defraud the United States means primarily [1] to cheat the Government out of property or money, but it also means [2] to interfere with or obstruct one of its lawful governmental functions by deceit, craft, or trickery, or at least by means that are dishonest."). Not surprisingly, as a result, we frequently have upheld convictions for conspiring to defraud the government by committing acts in support of tax evasion, *see, e.g.*, *United States v. Khalife*, 106 F.3d 1300 (6th Cir. 1997); *United States v. Sturman*, 951 F.2d 1466, 1472 (6th Cir. 1991), an historical reality that provided still further notice to the defendant that the government does not tolerate this kind of conduct.

Mrs. Ouwenga next argues that IRS Form 1040 violates 44 U.S.C. § 3512, a section of the Paperwork Reduction Act, making it inappropriate to characterize the failure to file a Form 1040 tax return as an overt act in furtherance of the conspiracy charge. Our court, *see United States v. Wunder*, 919 F.2d 34, 38 (6th Cir. 1990), and other courts of appeals, *see United States v. Ryan*, 969 F.2d 238, 240 (7th Cir. 1992); *United States v. Hicks*, 947 F.2d 1356, 1359 (9th Cir. 1991); *United States v. Kerwin*, 945 F.2d 92, 92 (5th Cir. 1991), have held repeatedly that this legislation does not invalidate the statutory requirement to file tax returns and pay the taxes due. Defendant has offered

no reasoned explanation for abandoning our circuit precedent on this point, even if (as a panel) we had authority to do so, which we do not.

Mrs. Ouwenga next challenges her criminal-contempt convictions on a separate ground, arguing that 18 U.S.C. § 401(3) is unconstitutional because there are no limitations on its "outer boundaries" or its "punishment." The Supreme Court has previously considered and rejected a similar argument. *See Green v. United States*, 356 U.S. 165 (1958); *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911). On top of this precedent, the Sixth Circuit itself has limited the circumstances in which the government may bring criminal-contempt charges, *see, e.g.*, *Downey v. Clauder*, 30 F.3d 681, 686 (6th Cir. 1994), limitations that do not apply here.

D.

Mrs. Ouwenga's invocation of the Speedy Trial Act also comes up short. The Act requires a defendant to be indicted within 30 days of arrest and to be tried within 70 days of indictment. 18 U.S.C. § 3161. While Ouwenga was initially imprisoned based on the violation of a show-cause civil-contempt order, we have held (in an analogous context) that the Speedy Trial Act does not recognize civil incarceration in its calculations. *See United States v. Garcia-Echaverria*, 374 F.3d 440, 451–52 (6th Cir. 2004) (addressing civil detention of aliens); *see also* 18 U.S.C. § 3161(a). Under these circumstances, Mrs. Ouwenga's detention did not violate the 30-day requirement. As to the delay after indictment—from September 12, 2003, to April 5, 2004—that resulted from waiting for a competency evaluation for her co-defendant Judith Cormier. According to the Speedy

Trial Act, "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant" should be excluded from the computations of delay. 18 U.S.C. § 3161(h)(1)(A). And this court has held that the request of a co-defendant for a mental evaluation properly tolls the Act. *United States v. Logan*, Nos. 97-5912, 97-5914, 1999 U.S. App. LEXIS 16966, at \*49 (6th Cir. July 19, 1999) ("Moreover, a defendant's right to speedy trial is not violated by the grant of a continuance in a joint trial where one defendant asks for reasonable time to undergo a mental examination."). Other circuits have concluded likewise. *See United States v. Papaleo*, 853 F.2d 16, 20 (1st Cir. 1988) ("[A]ny delay resulting from any proceeding, including any examinations, to determine the mental competency . . . of the defendant is excludable, 18 U.S.C. § 3161(h)(1)(A), and [ ], if reasonable, it is excludable as to him even though it was his co-defendant for whom the exam was ordered, 18 U.S.C. § 3161(h)(7).") (internal quotation marks omitted); *United States v. Patterson*, 140 F.3d 767, 772 (8th Cir. 1998). No violation of the Speedy Trial Act occurred.

E.

The district court imposed the current sentence under the then mandatory Sentencing Guidelines. In doing so, however, it anticipated that the Supreme Court might invalidate the Guidelines and thus issued alternative concurrent 24-month sentences for counts one and two, which were to be served concurrently with the 12-month sentences for counts six and seven. Because the original sentence violates *United States v. Booker*, 543 U.S. 220 (2005) and because the departure contemplated by the alternative sentence was not based on the factors identified in 18 U.S.C.

§ 3553(a), *see United States v. Jackson*, 408 F.3d 301 (6th Cir. 2005), we vacate the original sentence and remand for resentencing. Resentencing, we anticipate, will be done promptly in view of the fact that Mrs. Ouwenga has already served a considerable portion of the original sentence and most, if not all, of the proposed alternative sentence.

### III.

For these reasons, we affirm Mrs. Ouwenga's convictions, vacate her sentence and remand for resentencing.