# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2713

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| v. | * |
| | * |
| Gregory Alan Krutsinger, also known | * |
| as Krutsy, also known as KKK, | * |
| | * |
| Defendant - Appellee. | * |

_____

No. 05-2781

_____

Appeals from the United States
District Court for the District of
North Dakota.

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| v. | * |
| | * |
| Katherine Colleen O'Meara, | * |
| | * |
| Defendant - Appellee. | * |

_____

Submitted: February 15, 2006
Filed: June 6, 2006

_____

Before RILEY, HEANEY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Gregory Alan Krutsinger and Katherine Colleen O'Meara pled guilty to making false declarations before a grand jury in violation of 18 U.S.C. § 1623 and obstruction of justice in violation of 18 U.S.C. § 1503. They were sentenced by the district court[1] to twenty-one and twenty-four months respectively. The government filed a timely appeal, arguing that the sentences were unreasonable. We affirm.

I.

Krutsinger and O'Meara were low-level participants in a large conspiracy to distribute methamphetamine. Both testified before a grand jury pursuant to a grant of informal immunity. Both later pled guilty for having committed perjury.

The district court found that the underlying conspiracy involved more than fifteen kilograms of methamphetamine and correctly calculated the advisory Guidelines offense level as thirty-eight pursuant to United States Sentencing Guidelines §§ 2J1.2 and 2J1.3. The district court then correctly applied the cross referencing formula of U.S.S.G. § 2X3.1(a)(3)(A), which limits to thirty the maximum base offense level for an accessory after the fact. The district court then applied a three-level reduction to Krutsinger and O'Meara for their acceptance of responsibility.

Krutsinger's offense level of twenty-seven, in combination with his criminal history category of IV, resulted in an advisory Guidelines range of 100 to 125 months. The government made a substantial assistance motion pursuant to U.S.S.G. § 5K1.1. The government's recommendation was sixty months, a forty percent reduction from

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

the low end of the advisory Guidelines range. The district court sentenced Krutsinger to twenty-one months.

At sentencing, the district court offered a number of reasons for the sentence it imposed. Although Krutsinger had benefitted from the government's § 5K1.1 motion, the court felt the government's recommendation did not fully recognize the extraordinary nature of the assistance provided. Krutsinger provided assistance in a timely fashion and continued to offer assistance until the time of his sentencing. The information he provided was extensive and truthful, and it resulted in other defendants pleading guilty. The district court also noted that while on presentence release, Krutsinger did not present any problems to his pretrial services officer. In fact, Krutsinger maintained sobriety and lived a stable life. He also spoke to the public about the dangers of drug addiction.

O'Meara's offense level of twenty-seven, in combination with her criminal history category of I, resulted in an advisory Guidelines range of seventy to eighty-seven months. The government recommended a sentence of seventy months. The district court sentenced O'Meara to twenty-four months.

In sentencing O'Meara, the district court referred to her "extraordinary rehabilitative efforts." These included her voluntary completion of a drug treatment program prior to being indicted and her continued attendance at Alcoholics Anonymous and Narcotics Anonymous meetings. The district court also emphasized that O'Meara had difficulties with obsessive compulsive disorder, was employed at the time of sentencing, and had re-established a relationship with her family.

The sentencing memoranda for both Krutsinger and O'Meara also expressed the district court's desire not to impose disparate sentences. The court explained that Linda Quam, another member of the same conspiracy who was very similarly situated to O'Meara, was also convicted for lying to the grand jury and had been sentenced to

only fifteen months. Likewise, another co-conspirator, Stanley Dietz, had co-operated and received a § 5K1.1 departure. In the Dietz case, the government recommended a twenty month sentence, which was a seventy-one percent departure from the bottom of his Guidelines range.

## II.

We review the sentences imposed by the district court for reasonableness. The "standard of review is whether the district court abused its discretion by imposing . . . unreasonable sentence[s] on the defendant[s]." United States v. Haack, 403 F.3d 997, 1003 (8th Cir. 2005). We examine the 18 U.S.C. § 3553(a) factors to determine whether a sentence is unreasonable. United States v. Rogers, 400 F.3d 640, 641 (8th Cir. 2005).

## III.

This case presents an unusual scenario. If we were only considering the characteristics of each defendant and the extent of his or her co-operation, we would likely reverse. See United States v. Bradford, No. 05-3493, slip op. at 5 (8th Cir. filed May 11, 2006); Haack, 403 F.3d at 1006; Rogers, 400 F.3d at 642. However, Booker made clear that the § 3553(a) factors must be considered in fashioning a reasonable sentence. United States v. Booker, 543 U.S. 220 (2005). Although the Guidelines remain an important factor in determining a sentence, there may be cases where another § 3553(a) factor predominates. See Haack, 403 F.3d at 1003 ("We, like the Second Circuit, realize that there may be situations where sentencing factors may be so complex, or other § 3553(a) factors may so predominate, that the determination of a precise sentencing range may not be necessary or practical."). This is such a case.

We are assisted in this case by a district judge that made a thorough and careful record of the reasons for the sentence in each case. The judge was clearly troubled by,

and ultimately determined his sentence based on, the § 3553(a)(6) factor: "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

In this case, within a four-month period, Quam, Krutsinger, Dietz, and O'Meara each committed the identical crime. They each lied in front of the grand jury about the involvement of friends or relatives in a drug conspiracy. By happenstance of timing, Quam was indicted first, was found guilty, and was sentenced using the U.S.S.G. § 2J1.2(c) cross-reference to § 2X3.1. Based on the information available to the government at that time, twenty to thirty grams of methamphetamine were attributed to the conspiracy. The result was an offense level of fourteen and a resulting Guidelines range of fifteen to twenty-one months. The government lodged no objection to this Guidelines computation. Quam was sentenced to fifteen months imprisonment.

The government does not seriously contest there is any difference between the offense conduct and defendant characteristics of O'Meara and Quam. Both have a criminal history of I, both committed the same crime in the same conspiracy, and neither co-operated. The only real difference, other than timing, was that O'Meara pled guilty while Quam went to trial, which is a difference that would indicate O'Meara should receive a lower, not a higher, sentence.

Because of the timing of her conviction, O'Meara ended up with a much higher offense level. By the time she was sentenced, the government had developed more information about the scope of the conspiracy and was by then able to attribute fifteen kilograms of methamphetamine to the conspiracy. As a result, O'Meara's Guidelines range was determined under § 2J1.3(c) using the cross-reference of § 2X3.1. This resulted in an offense level of thirty, less three levels for acceptance of responsibility,

for a final offense level of twenty-seven.  The resulting sentencing range was seventy to eighty-seven months.

We cannot say the district court abused its discretion in fashioning a sentence that attempted to address the disparity in sentences between two nearly identically situated individuals who committed the same crime in the same conspiracy.  The only distinction the government points to is the timing of the indictments.  There will be many cases where a defendant receives a higher Guidelines range when he or she pleads or is tried later in the conspiracy, after the government has more fully developed its case.  However, under the facts of this case, we cannot say the district court improperly applied § 3553(a)(6) or abused its discretion.

Likewise, the district court did not abuse its discretion in granting a substantial § 5K1.1 departure to achieve sentencing uniformity between Krutsinger and Dietz. The  government concedes Krutsinger provided as much, if not more, co-operation than Dietz.  Yet the government recommend a seventy-one percent departure in Dietz's case.  We cannot say the district court abused its discretion in granting a similar departure to a co-defendant who provided as much or more co-operation.

IV.

For the foregoing reasons, we find the sentences reasonable and affirm the judgments of the district court.

_____