*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0294p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

  *Plaintiff-Appellant,*

  *v.*

WILLIAM J. DAVIS,

  *Defendant-Appellee.*

> No. 05-3784

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 99-00110—Walter H. Rice, District Judge.

Argued: June 2, 2006

Decided and Filed: August 14, 2006

Before: BOGGS, Chief Judge; KEITH and SUTTON, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellant. C. Mark Pickrell, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellee. **ON BRIEF:** Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellant. C. Mark Pickrell, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellee.

  SUTTON, J., delivered the opinion of the court, in which BOGGS, C. J., joined. KEITH, J. (pp. 9-12), delivered a separate dissenting opinion.

———————————

## OPINION

———————————

  SUTTON, Circuit Judge. After a jury convicted William Davis of two counts of bank fraud, the district court calculated a guidelines sentencing range of 30 to 37 months. After considering the § 3553(a) factors, the court imposed a sentence of one day in prison because Davis was 70 years old at the time of sentencing and because he had committed the underlying crimes 14 years earlier. Unable to conclude that this variance is reasonable, we reverse.

I.

  In 1990, Davis applied for and received a $1.6 million line of credit from a local bank for Fries Correctional Equipment of Kentucky, Inc., a business in which he was a part owner and

1

president. *United States v. Davis*, 397 F.3d 340, 342 (6th Cir. 2005). Davis agreed to be a personal guarantor for the line of credit. *Id.* When the bank renewed the line of credit in 1991, Davis submitted a financial statement that omitted a $100,000 debt he had incurred during the previous year.

Fries Correctional defaulted on the loan in 1992, and the bank, invoking the personal guarantee, filed a civil action against Davis. In April 1992, during a deposition in the civil action, Davis claimed that he no longer owned several securities listed in a July 1991 financial statement. Other financial documents, however, showed this statement to be false, revealing that he had continued to own the securities until October 1992, when he sold them.

In 1992, Davis and his wife declared bankruptcy. And in August 1993, the federal government notified Davis that it intended to "initiate criminal proceedings against him" as a result of the defaulted loan. *Id.* at 342. When the Davis bankruptcy ended in 1996, the bank had yet to recover roughly $600,000 in loan proceeds.

On December 15, 1999, the government indicted Davis. And on May 23, 2002, a jury convicted him of two counts of bank fraud—one relating to the omission of the $100,000 loan from his 1991 financial statement, the other relating to the false statements he made during his April 1992 deposition.

In August 2003, the district court sentenced Davis. Applying the then-mandatory guidelines, it used a base-offense level of 6 and added 14 levels due to the amount of the loss. The court rejected Davis's requests for a downward departure based on:

> (1) acceptance of responsibility, *see* JA 381 (noting that Davis had "contested the facts and . . . the implications to be drawn from them");
>
> (2) post-conduct rehabilitation, *see* JA 384–85 ("There, quite frankly, is no evidence that this defendant now is an improved human being over what he was before this offense . . . ."); JA 387 (citing Davis's testimony at sentencing as an additional justification for denying the departure and noting that the testimony "was not as candid as perhaps it could be");
>
> (3) the government's delay in bringing the indictment, *see* JA 392 ("It would be difficult to say that a prosecution brought within the applicable statute of limitations is something outside the heartland of cases and beyond the thinking of the framers of the guidelines."); and
>
> (4) the claim that the guideline range did not accurately reflect the seriousness of the offense, *see* JA 384 (noting that the sentencing range did not overstate the seriousness of the offense).

All of this left Davis with a guidelines range of 33 to 41 months. "Normally," the court noted, it "would be inclined to sentence in the middle or upper reaches of the guideline range," but it decided to impose a 33-month sentence on each of the two counts (to run concurrently) and 5 years of supervised release. JA 394–95. In choosing the low end of the guidelines range, the court relied on Davis's age at the time (68) and the delay between the bank fraud and sentencing (12 years). The court did not impose restitution because Davis could not afford it.

On appeal, this court affirmed Davis's conviction but remanded the case for resentencing. As to the sentencing aspect of its decision, the court reasoned that the district court had calculated the sentence under the 2002 Guidelines Manual instead of the more-lenient version in effect when Davis committed the offense (the 1991 version), and that the court's imposition of a sentence under

mandatory guidelines violated *United States v. Booker*, 543 U.S. 220 (2005). *See Davis*, 397 F.3d at 350–52.

On April 29, 2005, the district court resentenced Davis. Using the 1991 version of the guidelines, the district court set Davis's base offense level at 6, then applied an 11-level enhancement due to the amount of the loss, *see* U.S.S.G. § 2F1.1 (1991), then added a 2-level enhancement for more-than-minimal planning in committing the offense, *see id*. § 2F1.1(b)(2). After concluding that Davis did not deserve a downward departure, the court determined that his criminal history category (I) and his offense level (19) generated an advisory guidelines range of 30 to 37 months. *See* JA 408.

The court then applied the factors listed in 18 U.S.C. § 3553(a) in exercising its independent judgment whether to deviate from the guidelines range. It first considered Davis's characteristics and history, *see* § 3353(a)(1), noting his age ("70 years and seven months"), that he was retired and had "moved back to Ohio to be near his family and his grandchildren" and that he had one prior offense (which was committed when he was a young man), JA 409. The court turned to the offenses of conviction, *see* § 3553(a)(1), which the court recognized were "serious when committed" and that "they remain serious," JA 409. The court pointed out, however, that the offenses had been committed "14 years ago." *Id.* It also noted that the defendant's "age and the length of time between the commission of the offenses and the date of sentencing" warranted consideration after *Booker* even though they were "not proper" to consider as grounds for a downward departure from the guidelines. *Id.*

In addressing "the public's interest in safety," *see* § 3553(a)(2)(C), the court concluded that "the public is in no danger from this defendant" because Davis is "retired," "[h]e does not control a business and in all probability has no desire to do so," JA 409–10. As for punishment, *see* § 3553(a)(2)(A), the court noted that "punishment to be effective must be reasonably close to the offense committed or it becomes, while not cruel and unusual, it becomes, I think, doubly erroneous," JA 410. The court was also "satisfied that the factors that [it] set forth . . . are such that the sentence . . . will not promote disrespect for the law." *Id*. *See* § 3553(a)(2)(A). As for deterrence, *see* § 3553(a)(2)(B), the court concluded that any sentence—whether it was "a day . . . [or] 10 years or anything in between"—"would be sufficient to deter this defendant from committing further crimes," JA 411. Because the court believed that "the factors in this case are unique enough," it concluded "that others who might be inclined to commit bank fraud are not likely to engage in that course of conduct in the hope that they will be treated as leniently" as the defendant. *Id*. The district court reasoned that the public's interest in rehabilitation, *see* § 3553(a)(2)(D), was well-served because "the defendant" has been, "in effect, rehabilitated by the passage of time," JA 411. The potential for "disparity in sentence between persons similarly situated who commit certain crimes," *see* § 3553(a)(6), was likewise not a concern because "[i]n th[e] Court's opinion, and recollection, it has dealt with very few 70-year-old people who were brought before the Court for sentencing 14 years after the fact," JA 411–12. Restitution also was not an issue because, as the court had found at Davis's original hearing (a finding the government did not appeal), Davis had no ability to pay restitution.

Taking all of these considerations into account, the court sentenced Davis to one day in prison for each of the two bank-fraud counts (running concurrently and with credit for the one day served when the U.S. Marshals took him into custody), three years of supervised release (including one year of home confinement) and 100 hours of community service.

## II.

On appeal, the government argues that the district court's imposition of a one-day sentence is "unreasonable[]." *United States v. Booker*, 543 U.S. 220, 261 (2005). We agree.

In reviewing challenges to criminal sentences after *Booker*, whether filed by a defendant or the government, *see* 18 U.S.C. §§ 3742(a), (b), we have distinguished between the procedural and substantive reasonableness of sentences. *See, e.g.*, *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). And thus far, in invalidating sentences imposed after *Booker*, we have done so only because the sentence was procedurally unreasonable—because, say, the district court did not appreciate the non-mandatory nature of the guidelines, *see, e.g.*, *United States v. Beasley*, 442 F.3d 386, 394–95 (6th Cir. 2006), did not correctly calculate the sentencing range under the guidelines, *see, e.g.*, *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005), or did not consider the § 3553(a) factors, *see, e.g.*, *United States v. Ouwenga*, 173 Fed. Appx. 411, 418 (6th Cir. 2006).

Today, however, we face a sentence that satisfies each of these procedural requirements and indeed can fairly be described as a thorough application of the § 3553(a) factors by an experienced and well-regarded district court judge. He used the appropriate version of the guidelines and correctly calculated the advisory guidelines range. He considered the availability of guidelines departures and decided against applying any. And he exercised the discretion that *Booker* gives him by independently considering and faithfully attempting to apply each of the § 3553(a) factors to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" § 3553(a)(2).

Under these circumstances, one might fairly ask what role appellate judges still ought to have in reviewing such sentences. We did not preside over the (two) sentencing hearings. Nor did we have a chance to face the defendant (twice) and listen to him (twice). And the district court satisfied every procedural requirement we have established in this area.

*Booker*'s requirement that appellate courts review sentences for "reasonableness," however, involves more than ensuring that district courts appreciate their sentencing discretion and issue mechanically correct sentences. In *Booker* itself, the Court indicated that reasonableness review will permit appellate courts to minimize sentencing disparities between and among district courts (and between and among courts of appeals). *See* 543 U.S. at 263 (noting that appellate review permits "sentencing differences" to be "iron[ed] out"). And one of the principal functions of § 3553(a) cannot be accomplished without such review—eliminating sentencing "disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). For while district courts no doubt can ensure that they satisfy § 3553(a)(6) as to defendants who come before them, they cannot eliminate unwarranted disparities circuit-wide.

Even though *Booker*'s remedial opinion principally "empowered district courts, not appellate courts," and "sentencing courts, not the Sentencing Commission, retain the ultimate authority within reason to apply the § 3553(a) factors to each criminal defendant," *United States v. Buchanan*, 449 F.3d 731, 741 (6th Cir. 2006) (Sutton, J., concurring), *Booker* still requires appellate courts to review sentences for abuses of that discretion in the form of substantively unreasonable sentences, *see United States v. Cage*, 451 F.3d 585, 591 (10th Cir. 2006) (invalidating a six-day sentence that varied from the advisory guidelines range of 46 to 57 months and noting that "[e]ven if a sentence is calculated properly, *i.e.*, the Guidelines were properly applied and the district court clearly considered the § 3553(a) factors and explained its reasoning, a sentence can yet be unreasonable"); *United States v. Zapete-Garcia*, 447 F.3d 57, 59 (1st Cir. 2006) (stating that appellate review of a "chosen sentence for reasonableness" involves looking for "a plausible explanation *and* a defensible overall result") (emphasis added); *see also* Hon. James G. Carr, *Some Thoughts on Sentencing Post-Booker*, 17 Fed. Sentencing Rep. 295, 296 (2005) ("[A]ppellate review of sentences . . . will continue to be of critical importance in controlling the discretion of District Judges and reducing disparity among District Judges in the Circuits.") (footnotes omitted).

In reviewing sentences for substantive reasonableness, we do not start from scratch, filling each sentencing vacuum with our own impressions of what makes intuitive sense on a given day.

Because the question at hand is whether the sentence is reasonable in light of the § 3553(a) factors, because one of those factors requires consideration of the guidelines sentencing range, § 3553(a)(4), and because the guidelines ultimately purport to account for most, if not all, of the § 3553(a) factors, *compare* 28 U.S.C. § 991(b)(1)(B) *with* 18 U.S.C. § 3553(a)(6); *compare* 28 U.S.C. § 991(b)(1)(B) *with* 18 U.S.C. § 3553(a), our review starts with the sentencing estimate provided by the Sentencing Commission for certain types of crimes and certain types of criminals. When the district court issues a within-guidelines sentence—when the independent views of the sentencing judge and the Sentencing Commission align—we apply a presumption of reasonableness to the sentence. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). And like every court of appeals to consider the question, we take the view that when the district court independently chooses to deviate from the advisory guidelines range (whether above or below it), we apply a form of proportionality review: "the farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a)" must be. *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005); *see also United States v. Martin*, ___ F.3d ___, 2006 WL 1889902, at *7 (11th Cir. July 11, 2006); *United States v. Smith*, 445 F.3d 1, 4 (1st Cir. 2006); *United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006); *United States v. Duhon*, 440 F.3d 711, 715 (5th Cir. 2006); *United States v. Lazenby*, 439 F.3d 928, 932 (8th Cir. 2006); *United States v. Cage*, 451 F.3d 585, 594 (10th Cir. 2006).

Few would disagree that we have an extraordinary variance in this case—from a guidelines range of 30 to 37 months to one day, to what the government refers to as a 99.89% variance—so the question is whether extraordinary circumstances justify the full amount of the variance. Not here, in our view.

One of the featured grounds for the variance—the 14-year gap between Davis's crimes and his second sentencing hearing—does not support such a dramatic variance (and indeed may not support a variance at all). Time intervals of this sort appear nowhere in the list of § 3553(a) factors. The underlying prosecution occurred within the statute-of-limitations period. And Davis has not raised any speedy-trial objections to the prosecution. Nor, at any rate, is it invariably clear when a legal delay in prosecuting or sentencing an individual becomes a friend or foe of the defendant. What criminal suspect, after all, wants the government (and grand jury) to pull the indictment trigger too quickly? And how often do elderly criminal defendants such as Mr. Davis seek expedited sentencing?

But even to the extent such a delay by itself might legitimately bear on a trial court's exercise of sentencing discretion (a point we need not decide), reliance on this factor at a minimum should require some evidence that the government bears unjustified responsibility for the delay and the defendant suffered from the delay. As the district court itself noted in issuing this sentence, however, any delays in indicting and prosecuting Davis flowed from "very practical reasons," not "any malicious motive" on the part of the government. JA 410.

Consistent with the district court's understanding, most if not all of the 14-year delay—between 1991 when Davis omitted a $100,000 debt on a financial statement to the bank and the April 2005 sentencing—was caused by legitimate considerations. One of the intervening years hardly counts because the second fraudulent act did not occur until 1992, when Davis did not disclose his continued ownership of certain securities. Another four years should not factor into the equation because the government could not know the extent of the loss from the fraud (and Davis's ability to repay the debt) until the end of Davis's bankruptcy in 1996. While the government took another three years to indict him (though it still acted within the statute of limitations), the record offers no suggestion that the three years were used for anything other than ensuring that the financial records showed that a fraud had occurred and that the government wished to exercise its prosecutorial discretion in bringing the charges. Another three years or so involve the gap between the indictment and jury conviction in 2002, but again Davis presumably consented to this delay as

he does not bring a speedy-trial challenge. Another year was occupied with preparing for the sentencing hearing, a proceeding that Davis apparently (and understandably) made no effort to expedite. And the two years between his first sentencing hearing (2003) and his second (2005) stemmed from Davis's success in making a *Booker* argument (among other arguments) on appeal.

Delays between the time a crime is committed and the time a guilty defendant serves his sentence of course should not be casually ignored. But the question here is not whether the delay violated Davis's statutory or constitutional rights or even whether the delay undermined the federal government's efforts to vindicate the purposes of this criminal statute. The question is whether the delay supplies an independent reason for such a marked deviation from the advisory guidelines range. The district court concluded that the delay did not authorize a *downward departure* either before *Booker* or after, and we agree. Neither, however, do we see how the delay favors such a dramatic *variance* when there has been no finding of government misconduct and no finding that the delay prejudiced the defendant. To be sure, an interval of years between a crime and the commencement of a sentence may affect the application of certain § 3553(a) factors. Time, for example, may allow a defendant to make whole all of the victims of his crime, or it may allow him to show demonstrable signs of rehabilitation. But, on this record, we are unpersuaded that the passage of time by itself justified a variance in this case, let alone a 99.89% variance.

What the delay principally did when it comes to the § 3553(a) factors was to allow the defendant to age—and age, the second reason for the district court's variance, may indeed be a legitimate basis for a variance. The defendant was 56 when he committed the first crime, and he was 70 at the time of the second sentencing hearing. When he committed the crime, he thus was of an age that would not likely have an impact on a guidelines range of 30 to 37 months. And when he was eventually sentenced, he was of a certain age (and retired from the profession from which he participated in the bank fraud) that might affect a trial judge's decision to grant a variance.

True, the guidelines said in 1991 (and similarly say today) that "[a]ge . . . is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.1 (1991); *see* U.S.S.G. § 5H1.1 (2004). That is why the district court correctly concluded at Davis's first and second sentencing hearings that he could not grant a downward departure based on Davis's age. But a trial judge's authority to exercise independent judgment in granting a variance after applying the § 3553(a) factors differs from his authority to grant departures. For example, while § 3553(a)(5) directs a sentencing court to consider "any pertinent policy statement[s]" issued by the Sentencing Commission (which would include the age-as-a-discouraged-factor provision), § 3553(a)(1) directs a sentencing court to consider the "history and characteristics of the defendant." In an appropriate case, a trial court, in exercising the "broad discretion" that *Booker* gives it "in imposing a sentence within a statutory range," 543 U.S. at 233, has a freer hand to account for the defendant's age in its sentencing calculus under § 3353(a) than it had before *Booker*. *See United States v. Smith*, 445 F.3d 1, 5 (1st Cir. 2006) (holding that district court's consideration at sentencing of defendant's age was not inappropriate and noting that even though "a factor is discouraged or forbidden under the guidelines," that "does not automatically make [the factor] irrelevant when a court is weighing the statutory factors apart from the guidelines"); *cf. United States v. Moreland*, 437 F.3d 424, 436 n.8 (4th Cir. 2006).

To say that a district court may account for a defendant's age at sentencing, however, is not to say that Davis's age (70) warrants a one-day sentence. The record shows that the fraud caused over $900,000 in loss; Davis did not repay the lost money; he did not accept responsibility for the crimes; and he has yet to show remorse for the crimes. While the district court stated that the sentence still would promote respect for the law, it never explained how that could be so given these sentencing facts—facts that the district court did not discuss in explaining this component of its ruling. While the district court stated that the defendant has been "rehabilitated . . . by the passage of time," JA 411, it did not point to any evidence of rehabilitation in the record, including what one

would assume represents a first step of rehabilitation—contrition for the crime. While the district court indicated that this sentence would serve the goals of societal deterrence, *see* 18 U.S.C. § 3553(a)(2)(B), it is hard to see how a one-day sentence for a lucrative business crime satisfies that goal. *See Martin*, ___ F.3d ___, at *11 ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (internal quotation marks and brackets omitted). And while age may well be an appropriate factor in choosing to grant a downward variance, the notion that the status of being 70 years old makes serving any prison time pointless is far from self-evident. *Cf. United States v. Tocco*, 200 F.3d 401, 434 (6th Cir. 2000) ("[E]ight judges of this court, still in service, are seventy years old or older. Many persons in business continue to serve in important capacities beyond seventy years of age."). In the end, the district court gave little, if any, discernible weight to the guidelines range and its explanations for deviating from that range fail to justify the magnitude of the variance.

Perhaps most problematically, the sentence represents the most extreme variance possible, leaving no room to make reasoned distinctions between Davis's variance and the variances that other, more worthy defendants may deserve. *Cf. United States v. Haack*, 403 F.3d 997, 1005 (8th Cir. 2005) (noting in a pre-*Booker* setting that "[a] departure of this extent," 120 months to 78 months, "leaves little room for greater departures for defendants" who present even more compelling reasons for leniency); *Moreland*, 437 F.3d at 437 ("If Moreland's circumstances are so compelling as to warrant a two-thirds reduction from the bottom of the advisory guideline range, it is difficult to imagine any meaningful limit on the discretion of the district court."). Consider the possibilities for other defendants in this area: those who paid restitution; those who accepted responsibility for the crime and showed remorse for committing it; those who used the time between the commission of the crime and sentencing to engage in other acts demonstrating rehabilitation; and, with respect to elderly defendants, those who had become infirm in the intervening years.

One of the central reasons for creating the sentencing guidelines, moreover, was to ensure stiffer penalties for white-collar crime and to eliminate disparities between white-collar sentences and sentences for other crimes. *See United States v. Brewer*, 899 F.2d 503, 508 (6th Cir. 1990) (citing Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L. Rev. 1, 20–22 (1988) & U.S.S.G. Ch. 1, Pt. A (Introduction)) (noting that the guidelines were an attempt by the Sentencing Commission to address discrepancies and inequities between sentences for white-collar crimes and other crimes), *overruled in part on other grounds by Koon v. United States*, 518 U.S. 81 (1996); *Martin*, ___ F.3d ___, at *11 ("The fact that Martin's guidelines range was 108–135 months' imprisonment evinces Congress's attempt to curb judicial leniency in the area of white collar crime."). A one-day sentence for this bank fraud conviction necessarily slights this worthy goal.

In asking us to affirm his sentence, Davis fails to direct our attention to a single case in which a downward variance of this proportion was affirmed. At the same time, numerous courts have invalidated sentences with less glaring (downward and upward) variances from the guidelines. *See, e.g.*, *United States v. Thurston*, ___ F.3d ___, 2006 WL 2065404, at *4, 9 (1st Cir. July 26, 2006) (reversing as unreasonable a sentence of 3 months when the advisory guidelines called for 60 months and identifying 36 months as the minimum sentence that could withstand reasonableness); *United States v. Smith*, 445 F.3d 1, 5–6 (1st Cir. 2006) (reversing as unreasonable a sentence of 46 months when the advisory guidelines range was 100 to 125 months); *United States v. Eura*, 440 F.3d 625, 630–34 (4th Cir. 2006) (reversing as unreasonable a sentence of 60 months when the advisory guidelines range was 78 to 97 months); *United States v. Moreland*, 437 F.3d 424, 434–37 (4th Cir. 2006) (reversing as unreasonable a sentence of 120 months when the advisory guidelines range was 360 months to life);*United States v. Lazenby*, 439 F.3d 928, 932–33 (8th Cir. 2006) (reversing as unreasonable a sentence of 12 months when the advisory guidelines range was 70 to 87 months); *United States v. Cage*, 451 F.3d 585, 587 (10th Cir. 2006) (reversing as unreasonable a sentence of

6 days when the advisory guidelines range was 46 to 57 months); *United States v. Martin*, ___ F.3d ___, 2006 WL 1889902, at *1 (11th Cir. July 11, 2006) (reversing as unreasonable a sentence of 7 days when the advisory guidelines range was 108 to 135 months); *cf. United States v. Crisp*, ___ F.3d ___, 2006 WL 1867754, at *4 (11th Cir. July 7, 2006) (reversing as unreasonable a sentence of 5 hours' detention when the advisory guidelines range was 12 to 15 months); *see also United States v. Zapete-Garcia*, 447 F.3d 57, 60 (1st Cir. 2006) (reversing as unreasonable a sentence of 48 months when the advisory guidelines range was 0 to 6 months); *United States v. Davenport*, 445 F.3d 366, 372 (4th Cir. 2006) (reversing as unreasonable a sentence of 120 months when the advisory guidelines range was 30 to 37 months)*; United States v. Kendall*, 446 F.3d 782, 784 (8th Cir. 2006) (reversing as unreasonable a sentence of 84 months when the advisory guidelines range was 27 to 33 months); *cf. Some Thoughts on Sentencing Post*-Booker, 17 Fed. Sentencing Rep. at 296 ("[A] critical factor that must be taken into account when evaluating how well or properly judges exercise their discretion when departing from the Guideline range . . . [is] the extent to which judicially initiated departures are outside the applicable range. There is a sizable difference between a 10 or 20 percent variance from a Guideline minimum or maximum and a variance of 50, 60, or 80 percent.").

No doubt, the district court retains ample discretion to grant Davis a variance on this record. And it will have an opportunity to do so on remand. But, for the reasons given, even the most animated application of the parsimony requirement—that the district court impose "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" § 3553(a)(2)—cannot justify a one-day sentence in this case. To rule otherwise, we respectfully submit, would intimate that reasonableness review is a theory, not a practice, and would fairly leave litigants wondering what downward (or upward) variances exceed a district court's discretion if a 99.89% downward variance on less-than-extraordinary facts lies within that discretion. Modest though reasonableness review may be, it is not non-existent.

III.

For these reasons, we reverse and remand the case for resentencing.

---

**DISSENT**

---

DAMON J. KEITH, Circuit Judge, dissenting. I am saddened and distressed by the majority's opinion, which totally disregards the district court's authority to impose a fair and reasonable sentence that is "sufficient but not greater than necessary" to effectuate the purposes of sentencing. Reversing the district court's sentence is a complete miscarriage of justice. Therefore, I respectfully dissent.

For years, district court judges have grappled with mandatory sentencing guidelines that constrained their power to impose just sentences. In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court granted district courts the power to evaluate the circumstances of each case and make an individualized sentencing determination. Regrettably, the majority's holding, finding Davis's sentence substantively unreasonable, strips the district courts of its power to issue a reasonable sentence in accordance with the now advisory sentencing guidelines. Here, in accordance with *Booker*, the district court complied with the Supreme Court's mandate. Therefore, I cannot agree with the majority's holding.

*Booker* drastically changed the sentencing guidelines. As the guidelines are advisory, the district courts must now consider the applicable guideline range *along* with the factors set forth in 18 U.S.C. § 3553(a) and make an *individualized* sentencing determination. *Booker*, 543 U.S. at 261. The Guidelines are now "generalized recommendations about the range of sentences appropriate for certain crimes committed by individuals with certain backgrounds." *United States v. Buchanan*, 449 F.3d 731, 736 (6th Cir. 2006) (J. Sutton, concurring). The majority properly finds that the district court's sentence was procedurally reasonable, but erroneously finds the substantive sentence unreasonable. *See* Majority Op. at 4. I cannot concur with the majority's holding because (1) the majority opinion fails to properly defer to the district court and (2) the district court, viewing the totality of the facts, properly found extraordinary circumstances to justify the departure from the advisory guideline range.

## I.     Deference to the District Court

The majority finds that the variance in this case justifies finding the sentence substantively unreasonable. Other circuits have accorded the district courts proper deference and sustained below the guideline sentences as reasonable where the district court adequately evaluated the factors set forth in § 3553(a). *See United States v. Krutsinger*, 449 F.3d 827 (8th Cir. 2006) (affirming co-defendants' sentences of 21 and 24 months that were below the 100 to 125 and 70 to 87 advisory guideline ranges respectively); *United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006) (affirming 72 month sentence that was below the advisory range of 151 to 188 months); *United States v. Halsema*, 2006 WL 1229005 (11th Cir. May 9, 2006) (unpublished) (affirming 24 month sentence that was below the advisory range of 57 to 71 months as reasonable); *United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming 87 month sentence that was below the advisory range of 108 to 135 months as reasonable); *United States v. Montgomery*, 165 Fed.Appx. 840 (11th Cir. Feb. 7, 2006) (unpublished) (affirming 8 month sentence that was below the advisory range as reasonable); *United States v. Williams*, 435 F.3d 1350 (11th Cir. 2006) (affirming a 90 month sentence that was below the advisory range of 188 to 235 months as reasonable).

The current trend across the circuits is to afford less deference to district court sentences that depart below the advisory guideline range over sentences that depart upward from the advisory guideline range. *See*, *United States v. Mack*, 452 F.3d 744 (8th Cir. 2006) (reversing an above the guideline sentence as unreasonable); *United States v. Davenport*, 445 F.3d 366 (4th Cir. 2006)

(same); *United States v. Castro-Juarez*, 425 F.3d 430 (7th Cir. 2005) (same). This holding cannot be reconciled with *Booker*, which instructs the appellate courts to review a sentence for reasonableness regardless of where the sentence falls in relation to the advisory guidelines range. *Booker*, 543 U.S. at 260 (stating that the standard of review is reasonableness and directing the court to review whether a case is reasonable utilizing the factors set forth in § 3553(a)).

The majority also reduces the evaluation of the district court's sentence to a formulaic assessment of how much the sentence varies from the advisory guideline range to determine whether the defendant's sentence is unreasonable. In engaging in this mechanical assessment, the majority starts this Court down the path of the pre-*Booker* days where the district courts were bound by an algebraic application of the guidelines. This precedent will inevitably lead to the district courts feeling reluctant to ever impose a sentence below the advisory guideline range for fear of reversal at the appellate level. *See Williams*, 435 F.3d at 1354 fn. 2 (disagreeing with a mechanical application of the guidelines the Court stated that "[a]fter *Booker*, the sentencing Guidelines are advisory, and the sentencing court, in its own discretion, can move below the advisory Guideline range without a motion for a downward departure as long as the resulting sentence is reasonable."). *See also United States v. Gaskill*, 991 F.2d 82, 86 (3rd Cir. 1993) (stating that "[d]istrict judges, therefore, need not shrink from utilizing departures when the opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence."). In this case, the district court imposed a sentence that is fair and reasonable in light of the totality of the circumstances.

## II.	Extraordinary circumstances exist to justify the variance

The principal issue the majority addresses is whether in this case extraordinary circumstances exist to justify such a large variance from the advisory guidelines range. The majority states that "[f]ew would disagree that we have an extraordinary variance in this case – from a guidelines range of 30 to 37 months to one day, to what the government refers to as a 99.98% variance – so the question is whether extraordinary circumstances justify the full amount of the variance." Majority Op. at 5. Sentencing Davis within the advisory guidelines would mean that he would receive a sentence ranging from two and one-half years to three years. Disturbingly, Davis would not be released from prison until he is seventy-five years old.

The totality of the circumstances, however, demonstrate extraordinary conditions to justify the district court's sentence. When making its decision, the district court considered the following factors: (1) Davis's age; (2) the fourteen year time period between the offense and sentencing; (3) the fact that his crime was not a crime of violence; (4) the fact that Davis has had no further criminal activity since this offense; (5) his being unemployed and receiving social security; (6) his declaring bankruptcy; and (7) his grandchildren. Although when taken individually these factors may not justify a variance from the advisory guideline range, when considered collectively they do. In addition, the district court made a specific finding stating that "the defendant is, in effect, rehabilitated by the passage of time." (J.A. 411) This is evinced by the fact that for over fourteen years Davis has not had any contact with the law. In addition, the district court found that Davis at seventy years old is not likely to engage in further illegal business pursuits. The court also stated that "[a]s far as deterrence is concerned, frankly, it wouldn't, in this [c]ourt's opinion, matter what sentence [the court] imposed, it could be a day, it could be 10 years or anything in between, that would be sufficient to deter this defendant from committing further crimes." *Id.* While each factor considered separately might not justify a variance from the guidelines, viewing these facts together, justice is in no way served by this Court remanding for the district court to impose a higher sentence. The totality of the circumstances undoubtedly shows that this is an extraordinary case where the circumstances justify a variance of this magnitude.

The district court did not order restitution because Davis is currently unemployed, has declared bankruptcy, and is receiving social security while his wife works as a bank teller. Moreover, since Davis committed the offense fourteen years ago, he has not engaged in any further criminal conduct. The district court also properly considered the fact that Davis is married and has moved to Ohio to be with his children and two grandchildren. More importantly, his fraud conviction was not a crime of violence. The district court properly noted that Davis was retired from his business and he was no longer a threat to public safety.

The district court also considered the fourteen year lapse between the offense conduct and his sentence. The majority asserts that the variance was not justified when the consideration of time intervals appears no where in § 3553(a) factors, there was no statute of limitations violation, no speedy trial claims, nor did the government have a malicious intent to delay the process. *See* Majority Op. at 5. The majority also asserts that delay in itself is not an independent reason for a departure.

While delay does not appear within the guidelines, § 3553(a) permits the district court to consider any pertinent policy statement in the guidelines manual, which includes departures. Prior to *Booker*, this Court acknowledged that a downward departure may be based on the aggregation of factors each of which might in itself be insufficient to justify a departure. *United States v. Coleman*, 188 F.3d 354, 360 (6th Cir. 1999) (*en banc*). Further, *Booker's* advisory holding permits district courts to depart more freely than prior to *Booker* and consider factors outside of the standard guideline departures. Given these considerations, the district court properly considered the time between Davis's criminal conduct and his sentencing.

The majority minimizes the lapse in time stating that through the ordinary course of criminal proceedings (*i.e.* the investigation prior to the indictment, Davis's bankruptcy, the jury trial and his appealing his sentence) his sentencing was delayed through no fault of the prosecution. Fourteen years is unjustifiable. *Cf. Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686 (1992) (under speedy trial act finding six year delay violated defendant's constitutional rights); *United States v. Brown*, 169 F.3d 344, 351 (6th Cir. 1999) (under speedy trial act finding a five and one-half year delay violated defendant's constitutional rights); *United States v. Graham*, 128 F.3d 372, 376 (6th Cir. 1997) (under speedy trial act finding eight year delay violated defendant's constitutional rights). The record does not show any exigent circumstances to justify this delay. During this time, Davis has had to deal with the emotional stresses that resulted from the delay in prosecuting this case. Even though the passage of time does not appear as a factor to be considered anywhere in § 3553, this is an extraordinary factor that should not be discounted or ignored.

The majority also improperly finds that Davis's age along with other factors did not justify the variance from the advisory guidelines. Davis's age was significant because it is connected with the unreasonable passage of time. In addition, the district court properly found that at seventy years old Davis would not engage in similar criminal business activities, nor does he have the financial capacity to do so where he filed for bankruptcy and his only source of income is social security. Further, Davis has gone fourteen years without committing any additional criminal offenses. Specifically, the district court articulated that Davis had reached an age where he would not engage in similar business pursuits. *See* United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 (stating that "recidivism rates decline relatively consistently as age increases," from 35.5% under age 21, to 9.5% over age 50).

While not directly relying on *United States v. Tocco*, 200 F.3d 401, 434 (6th Cir. 2000), the majority cites this case for the proposition that "the notion that the status of being 70 years old makes serving any prison time pointless is far from self-evident." Majority Op. at 7. This case incorrectly equates serving a prison term and the conditions of prison to the mental capacity

necessary to serve as a federal judge. Further, *Tocco* is remarkably different from the facts of this case. Tocco was involved in the Detroit branch of a national Mafia organization. Tocco was convicted in a jury trial for his involvement in illegal activities such as extortion, illegal lotteries, book making, loansharking, and acquiring undisclosed and illegal investments. *Tocco*, 200 F.3d at 410. The district court sentenced Tocco to twelve months and one day in prison concurrently for three counts. The district court departed downward ten levels from the applicable guideline range. The district court determined that this case was an extraordinary case, outside the heartland of cases because of Tocco's overwhelming community service, his age and debilitating health, and his wife's poor health. *Id*. at 427. The government appealed the sentence contending that the ten level departure was not proper. This Court remanded for the district court to reconsider its departure. This Court was justified in discounting Tocco's age because Tocco was still active in his illegal business. In contrast, Davis is not involved in his business, is currently receiving social security, and has not been involved in any criminal activities for the past fourteen years.

Certainly, the district court properly exercised its discretion finding that Davis's age in connection with other factors warranted departing below the advisory guideline range. Contrary to the majority's assertion, this is a rare case where fourteen years have elapsed between the indictment and the sentence, the defendant is seventy years old, has filed for bankruptcy, and retired from the business pursuits through which the fraud charged stemmed. Given the unique facts in this case, including the time interval and Davis's age, the district court's sentence was sufficient to achieve the purposes articulated in the sentencing guidelines.

## III.    Conclusion

My principal concern with the majority's holding is that it establishes a precedent whereby this Court is micromanaging the sentencing process and second guessing the district court's determination after presiding over the hearings. *United States v. Jones*, 445 F.3d 865, 871 (6th Cir. 2006) (cautioning that the appellate courts should not engage in "appellate micromanaging of the sentencing process"); *see also United States v. Medearis*, 451 F.3d 918, 922 (8th Cir. 2006) (stating that "[s]entencing courts have the unique ability to appraise the evidence and personally assess a defendant."). When the district court effectively engages in the correct procedural process and exercises its discretion to impose an individualized sentence, the appellate courts should have limited authority to micromanage the district courts. When the district court has spoken to the defendant in person, had a chance to evaluate Davis's demeanor, weighed all of the facts and heard all of the evidence in support of sentencing, the appellate courts should not second guess the district court.

Respectfully, I cannot concur in a judgment where the majority authorizes this Court to substitute its own judgment for that of the district court to depart below the advisory guidelines range. The majority improperly chooses to substitute its opinion under the extraordinary circumstances that I have enunciated in this dissent and therefore takes away the discretionary authority of the district court. If the district court under these extraordinary circumstances, and after making a specific finding that Davis has been "rehabilitated by the passage of time"– a finding which still has not been deemed clearly erroneous– does not have the discretion to impose an individualized sentence, then I ask who should? Certainty not the appellate court. This case is the prime example of extraordinary circumstances where the district court, in compliance with §3553(a), imposed a sentence that was "sufficient but not greater than necessary" to effectuate the purposes of sentencing. The district court, in my judgment, has not abused its discretion. I therefore vigorously dissent.