*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0301p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――

No. 05-6562
UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEPHEN L. KELLER,

*Defendant-Appellant.*

Nos. 05-6562/6725

No. 05-6725
UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

ROBERT GRANT SUTHERLIN,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 02-00095—Karl S. Forester, District Judge.

Argued: April 24, 2007

Decided and Filed: August 8, 2007

Before: GUY, COLE, and McKEAGUE, Circuit Judges.

―――――――――

**COUNSEL**

**ARGUED:** Susan G. James, SUSAN G. JAMES & ASSOCIATES, Montgomery, Alabama, John D. Cline, JONES DAY, San Francisco, California, for Defendants. John Patrick Grant, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Plaintiff. **ON BRIEF:** Susan G. James, SUSAN G. JAMES & ASSOCIATES, Montgomery, Alabama, John D. Cline, JONES DAY, San Francisco, California, for Defendants. John Patrick Grant, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Plaintiff.

1

_____

**OPINION**

_____

R. GUY COLE, JR., Circuit Judge. Stephen Keller and Grant Sutherlin were convicted of multiple counts of fraud and money laundering in connection with their operation of a viatical company. At their initial sentencing hearings, the district court imposed the lowest possible sentence on both defendants, pursuant to the then-mandatory Sentencing Guidelines. Sutherlin was sentenced to 151 months of imprisonment and Keller received 168 months. Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), both defendants' sentences were vacated and their cases remanded for re-sentencing. On remand, the district court imposed sentences on each defendant that varied downward substantially from their respective Guidelines' minimums. The court sentenced Sutherlin to 36 months in prison, representing a variance of 115 months; Keller was sentenced to 120 months in prison, which constitutes a variance of 48 months.

The Government now appeals Sutherlin's sentence as substantively unreasonable. In addition, Keller appeals his sentence as both procedurally and substantively unreasonable. For the reasons described below, we **VACATE** Sutherlin's sentence and **REMAND** for re-sentencing, and **AFFIRM** Keller's sentence.

## I. BACKGROUND

**A.    Facts**

In 2003, a jury convicted co-defendants Sutherlin and Keller of fraud and money laundering in connection with a scheme to purchase fraudulently obtained life-insurance policies and then re-sell them to private investors.

Keller was the owner of Kelco, Inc., a Lexington, Kentucky-based viatical company. Sutherlin began working for Kelco in 1994, when he was 17 years old, and he dropped out of college to work full-time for the company, eventually becoming its Vice President.

As a viatical company, Kelco purchased life-insurance policies from terminally ill people, particularly HIV patients, for less than the face value of the policies and then re-sold them to investors. Keller was Kelco's chief executive officer and Sutherlin had responsibility for negotiating the purchase and sale of the insurance policies.

Life-insurance companies typically will not write policies for persons with terminal illnesses such as HIV and AIDS. Keller and Sutherlin purchased policies from persons who they knew had obtained them by fraud, i.e., Keller and Sutherlin knew that the policyholders had lied to the insurance companies about the true state of their health. What's more, Keller and Sutherlin encouraged HIV and AIDS patients to apply for as many policies as they could and then sell them to Kelco, so that Kelco would have more policies to re-sell to investors. In some instances, Keller and Sutherlin asked HIV patients to obtain higher-value policies that would require a blood sample. In those cases, Keller and Sutherlin instructed the HIV patients to arrange for someone else to give the blood.

Many of the policies that Kelco purchased were "contestable," meaning that they were within the two-year period from the policy's effective date in which the insurance company could cancel the policy if it discovered that the policy had been procured through fraud. Keller and Sutherlin knew that if a contestable policy were cancelled by an insurance company, the third-party to whom they had sold the policy would sustain a complete loss on his or her investment. Kelco worked to conceal its purchase of these contestable policies from the insurance companies, first by making it

appear as though the beneficiaries were using their policies as collateral for loans, and later by setting up trusts.

Keller and Sutherlin profited handsomely from their scheme. Keller's income exceeded $1 million during the late 1990s and Sutherlin's income rose from $213,417 in 1997 to $376,281 in 1999. All-in-all, federal agents determined that Kelco had purchased at least 445 fraudulently obtained life-insurance policies with a face value of more than $37 million.

## B. Procedural History

Sutherlin and Keller appealed their convictions to this Court, which we affirmed in 2004. *United States v. Sutherlin*, 118 F. App'x 911 (6th Cir. 2004). Sutherlin and Keller subsequently appealed their sentences, which were vacated and remanded in light of the Supreme Court's opinion in *Booker*. The district court having re-sentenced both defendants, the Government now appeals Sutherlin's sentence and Keller appeals his sentence.

     1.      *Sutherlin's First and Second Sentencing Hearings*

At Sutherlin's initial sentencing on August 12, 2003, the district court calculated a base offense level of 34 and a Criminal History Category of I, which yielded a Sentencing Guidelines range of 151-188 months. Under the then-mandatory Guidelines, the court sentenced Sutherlin to 151 months of imprisonment on counts 24 through 46 of the indictment and 60 months on each of counts 1 through 23, to be served concurrently. In addition, Sutherlin was sentenced to three years of supervised release upon the termination of his imprisonment, and ordered to pay a special assessment of $4,600 and restitution of $661,292.

Following the Supreme Court's decision in *Booker*, which rendered the Sentencing Guidelines advisory, Sutherlin's case was remanded for re-sentencing. The second sentencing hearing took place on September 16, 2005. Sutherlin took his opportunity to allocute by apologizing to the court, his family, and the victims of his fraudulent activity, in what the record suggests was an emotional statement. Sutherlin stated that he "wish[ed] that back then I had the judgment not to listen to what Steve [Keller] told me and I wish that I had listened to my parents and stayed in college at UK, but I can't turn back the clock." (Joint Appendix ("JA") 1309.) Sutherlin pleaded with the court to "[p]lease give me the chance to provide for my wife and daughter and please give me a chance to pay my restitution. I promise you, Your Honor, that you will be proud of me." (JA 1309.) The Government acknowledged that Sutherlin's contrition was "genuine" and "heartfelt." (JA 1310.)

After hearing from Sutherlin and counsel on both sides, the district court proceeded to thoroughly discuss the issues that it was bound to consider in imposing sentence. As an initial matter, the district court properly recognized that the Guidelines are now advisory and that the duty of the sentencing judge is to "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth" in § 3553(a)(2). The court specifically recited each of the § 3553(a) factors and also acknowledged that it was required to consider the policy statements embodied in that section. The district court noted that the advisory Guidelines range in Sutherlin's case remained 151 to 188 months and that although the Guidelines are advisory, they are "still a matter which must seriously be considered." (JA 1312.)

The district court then applied each of the § 3553(a) factors in light of Sutherlin's individual characteristics. With respect to the "nature and circumstances of the offense and the history and characteristics of the Defendant," the court found that Sutherlin's youth was a significant consideration in determining his sentence. The court noted that Sutherlin was "just a kid" when, at age 17, he went to work for Keller. (JA 1313-14.) Given Sutherlin's youth and impressionability, the court found that Keller was able to exercise substantial influence over Sutherlin. Keller

persuaded Sutherlin to drop out of college to work full-time at Kelco and Keller lavished Sutherlin with a prestigious title and a generous salary. According to the court, Keller "exploited Mr. Sutherlin's youth and lack of education and lack of experience with a substantial salary and an elevated position in the company. A position that he could never have hoped to have obtained outside of Kelco." (JA 1313.) The court noted that Sutherlin was only 21 in 1998, when most of the fraudulent policies were sold, and just 23 in 2000 when Kelco's illegal operations came to an end. The court stated that although Sutherlin's youth was not a basis for departing from the Guidelines under the pre-*Booker* regime, it was an important factor to be considered in the post-*Booker* world.

Next, the court noted that Sutherlin was "deeply, deeply remorseful for his actions and seems to have now underst[ood] the wrongfulness of his past conduct." (JA 1314.) The court further stated that the letters it had received on Sutherlin's behalf further showed the depth of Sutherlin's contrition.

The court also was impressed by Sutherlin's activities since his original sentencing, explaining that Sutherlin had been a "productive and []hard working citizen working to resurrect his father's aviation sales business prior to reporting to prison." (JA 1314.) While incarcerated, Sutherlin had not been a disciplinary problem, had organized a bible-study group, and had worked hard to keep in regular touch with his wife and daughter. The court further noted that Sutherlin had paid his $4,600 special assessment and had made regular restitution payments, including while in jail, that totaled $3,000.

With respect to crafting a sentence that reflects the seriousness of the offense, the district court concluded that "[t]here is no question that these offenses were serious and the proof of the Defendant's culpability was overwhelming at trial." (JA 1315.) However, Sutherlin had taken responsibility for his conduct and had not blamed the Government for his circumstances or claimed to have been unfairly convicted.

Turning to the need to promote deterrence, the court again noted that Sutherlin was "deeply remorseful." (JA 1315.) Although the court characterized Sutherlin as "an integral part of [the] fraud," it concluded that Sutherlin had "matured substantially over the past few years" and that he would likely be "a law-abiding citizen, productive, and a hardworking member of society upon his release." (JA 1316.) Likewise, Sutherlin's close family ties and his "desire to support his family" were additional factors that would deter him from re-offending. (JA 1316.) Based on these considerations, and the fact that Sutherlin did not have a history of violence or substance-abuse difficulties, the court concluded that there was no need "to protect the public from further crimes of the Defendant." (JA 1316.)

Next, the court considered the issue of disparity in sentencing and in so doing, rejected Sutherlin's argument that his sentence should be in keeping with the sentences imposed on other persons who were prosecuted in connection with Kelco's fraud. The court distinguished these defendants' sentences on the grounds that "[s]ome are terminally ill, several pleaded guilty and cooperated with the Government, and none was a leader or organizer of the conspiracy," like Sutherlin. (JA 1317.)

Finally, the court favorably viewed Sutherlin's ongoing efforts, including while incarcerated, to make regular payments toward satisfying his restitution obligation to the victims of Kelco's fraud.

With that, the district court imposed a sentence of 36 months of incarceration on all counts, to be served concurrently. The Government timely appealed.

2.       *Keller's First and Second Sentencing Hearings*

At Keller's initial sentencing, the district court calculated an offense level of 35 and a Criminal History Category of I, which resulted in a Sentencing Guidelines range of 168 to 210 months of imprisonment. Because the Guidelines were still mandatory at that time, the district court sentenced Keller to 168 months, the very bottom of the Guidelines range. The court further sentenced Keller to three years of supervised release and ordered him to pay a special assessment of $4,600 and restitution totaling $661,292.

At Keller's re-sentencing after remand, the court entertained extensive arguments from Keller's counsel, who urged the court to be lenient on the grounds that Keller had a supportive family and was well-regarded by community members; he was a first-time offender, except for "maybe a DUI or something of that nature;" he had "lived a far more productive life than a non-productive life and crime-free life;" and he had paid more than $600,000 toward his restitution obligation. (JA 1292, 1294.) In addition, the court heard testimony from Gary Johnson, a lawyer, who explained that he suffered debilitating health problems as a result of a genetic condition and that these problems left him nearly destitute. Johnson testified that Keller "was the only person I met who expressed any concern for the stress on me and the strain on me" and that because Keller bought his two life-insurance policies, Johnson was able to enhance substantially the quality of his life. (JA 1290-91.)

The Government urged the court to impose the same 168-month sentence it had imposed when the Guidelines were still mandatory. In addition to the magnitude of the fraud that Keller perpetrated, the Government focused on his lack of remorse and failure to take responsibility:

> What we've got here is a complete lack of contrition. Mr. Keller has at times blamed everyone else other than himself. He blames the regulators, the lawyers he had at Kelco. He blames the Government for the investigation and now he blames his lawyer at trial and maintains that the law is still unclear.

(JA 1293.)

Such a person, "who has no insight into his own conduct," claimed the Government, could not be deterred from committing future crimes. (JA 1293.) The Government also noted that Keller had not voluntarily paid anything in restitution; rather, the Government seized $600,000 in Keller's bank account after Keller fled the United States for Mexico and then Panama in the wake of his conviction.

In explaining its sentence, the district court properly recognized that the Guidelines are now advisory. The court further stated that it had considered the statutory sentencing factors pursuant to its obligation to tailor a sentence "sufficient but not greater than necessary to comply with the purposes set forth in paragraph 2 of the subsection." (JA 1300.) In weighing the sentencing factors, the court explained that on the one hand, Keller was responsible for "a huge fraud conspiracy which was very lucrative" for him, netting him one year nearly six million dollars. On the other hand, the court found that Keller "is a good family man, [and] is well-liked by a lot of people" and he "is a hardworker, he's bright, articulate." (JA 1301.) Echoing the Government's contentions about Keller's lack of remorse, the district court stated that "[s]o if there's any contrition here, I can't see it. I haven't heard it, I haven't read it, I haven't seen it." (JA 1299.) The court also noted that the letters he had received on Keller's behalf mostly alleged that Keller "did not receive a fair trial; that he is a victim of an oppressive government . . . ." (JA 1301.)

Despite the reasons that weighed against leniency, the district court imposed a sentence below the Guidelines minimum by 48 months. The court sentenced Keller to a term of 120 months

on counts 24 through 46 and 60 months each on counts 1 through 23 to be served concurrently. The court explained its decision to grant a significant variance on the grounds that "I believe there is some – there is a feeling on my part that even though Mr. Keller's unwilling to admit it, I believe he has learned his lesson. I think he will be a law-abiding citizen in the future . . . ." (JA 1303-04.)

Keller timely appealed.

## II. DISCUSSION

### A.    Standard of Review

Following *Booker*, we review criminal sentences for reasonableness. *United States v. Funk*, 477 F.3d 421, 425 (6th Cir. 2007). Reasonableness review has both substantive and procedural components. "A sentence may be considered substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (internal quotation marks and brackets omitted). A sentence may be procedurally unreasonable, on the other hand, if "the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in [section 3553(a)], and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005) (internal quotation marks omitted), *cert. denied*, 546 U.S. 1126 (2006).

Because the Guidelines are now advisory, the district court has the discretion to vary from the Guidelines range in order to comply with the mandate that the sentence be "sufficient, but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). *Collington*, 461 F.3d at 807-08. Sentences within the Guidelines range are afforded a presumption of reasonableness, but sentences outside of the Guidelines range are not presumptively unreasonable. *Rita v. United States*, ___ U.S. ___, 127 S. Ct. 2456, 168 L. Ed. 203, 216 (2007) (recognizing a presumption of reasonableness for within-Guidelines sentences but stating that "appellate courts may not presume that every variance from the advisory Guidelines is unreasonable"). However, the greater the variance outside of the Guidelines range, the more explanation the district court will have to provide and the more persuasive that explanation will have to be. Indeed, "when the district court independently chooses to deviate from the advisory guidelines range (whether above or below it), we apply a form of proportionality review: the farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) must be." *United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006) (internal quotation marks omitted); *United States v. Poynter*, __ F.3d __, 2007 U.S. App. LEXIS 17808, *20-22 (6th Cir. July 26, 2007) (noting that the Supreme Court will consider the validity of proportionality review next Term in *United States v. Gall*, No. 06-7949, and stating that *Rita* did not undercut continued application of the proportionality principle).

### B.    Sutherlin's Sentence

#### 1.    *The District Court's Consideration of Sutherlin's Post-Sentencing Conduct*

After the district court sentenced Sutherlin for the second time, we decided *United States v. Worley*, 453 F.3d 706 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 450 (2006). There, the defendant appealed his sentence following a *Booker* remand. He argued that the district court erred in failing to take into account his efforts to rehabilitate himself since his original sentencing. We held that the scope of a *Booker* remand does "not require or permit consideration of factors postdating the original sentencing." *Id.* at 707. We agreed with the district court that because the purpose of a *Booker* remand is to ensure that the defendant's sentence is consistent with the Sixth Amendment, the district court may consider only those facts that existed at the time the defendant was first sentenced.

*Id.* at 708.  In support of our holding, we cited approvingly from the Seventh Circuit's decision in *United States v. Re*, 419 F.3d 582, 584 (7th Cir. 2005), *cert. denied*, 547 U.S. 1054 (2006), in which that court explained: "The goal of the [*Booker*] remand is to determine if, at the time of sentencing, the district judge would have imposed a different sentence in the absence of mandatory guidelines. Post-sentencing events or conduct simply are not relevant to that inquiry."

Sutherlin argues that *Worley*'s statement that district courts are not "permit[ted]" to consider post-sentencing factors is *dicta* because *Worley* dealt with the question of whether district courts are required to consider such factors, not whether, even if not required, they may nonetheless do so.  In other words, Sutherlin claims that even after *Worley*, district courts disposing of *Booker* remands retain discretion to reduce a defendant's sentence on the basis of factors that did not exist as of the time of the original sentencing.

We disagree.  There is no basis for concluding that *Worley* allows district courts to take stock of post-sentencing developments but does not compel them to do so.  *Worley* expressly rejected any such distinction, stating that "the order of remand did not require or permit consideration of factors postdating the original sentencing hearing."  *Id.* at 707.  More importantly, *Worley* is predicated not on any notions of what is or is not compulsory or permissive for district courts but on the conclusion that consideration of post-sentencing factors is incompatible with the limited scope of a *Booker* remand, that is, reviewing whether the defendant would have received the same sentence had the Guidelines been advisory, rather than mandatory, at the time of the original sentencing.  *See United States v. Smith*, 208 F. App'x 425, 427 (6th Cir. 2006) (vacating sentence where the district court granted a 68-month downward variance on the basis of post-sentencing rehabilitation efforts because "the goal of the *Booker* remand . . . is to determine whether, *at the time of the original sentencing*, the district judge would have imposed a different sentence in the absence of mandatory guidelines").

Finally, even if there are cases in which consideration of post-sentencing factors is justified, this is not one of them.  *United States v. Lloyd*, 469 F.3d 319, 325 (3d Cir. 2006) (stating that the Third Circuit "essentially agree[s]" with the holding in *Worley* but that in "unusual" circumstances, a district court could properly take into account post-sentencing rehabilitative efforts), *cert. denied*, 127 S. Ct. 2444 (2007).  Sutherlin's clean post-conviction record, including his good behavior while incarcerated, and his stewardship of a family business are all commendable and have no doubt helped to right Sutherlin's course.  But they are not the kind of unusual circumstances that are deserving of consideration on a *Booker* remand.

There is no dispute that the district court here varied below the Guidelines minimum in imposing sentence on Sutherlin in part on the basis of Sutherlin's post-sentencing conduct. Sutherlin nonetheless contends that we need not remand the case for re-sentencing because even absent consideration of his favorable conduct since his original sentencing, the district court had ample other evidence before it from which to conclude that a 36-month sentence was "sufficient, but not greater than necessary" to effectuate the goals of § 3553(a)(2).  Sutherlin points to the letters from his family and friends attesting to his good character, the Pre-Sentence Investigation Report, the evidence from trial about his youth and impressionability, and his expressions of contrition at the sentencing hearing.

We have no trouble concluding that the district court reasonably could have varied below the Guidelines minimum here, and we have upheld several post-*Booker* sentences in which district courts have done just that.  *See e.g., United States v. Cherry*, 487 F.3d 366 (6th Cir. 2007) (affirming as substantively reasonable a sentence of 120 months where the Guidelines specified a sentencing range of 210 to 262 months of imprisonment); *United States v. Husein*, 478 F.3d 318 (6th Cir. 2007) (affirming a downward departure resulting in a sentence of three years' supervised release where the Guidelines called for 24 to 30 months of imprisonment); *United States v. Collington*, 461 F.3d 805 (6th Cir. 2006) (affirming sentence of 120 months as substantively reasonable where the

Guidelines yielded a range of 188 to 235 months). However, contrary to Sutherlin's argument, we cannot conclude on the record before us that the district court would have imposed the same 36-month sentence even had it not considered Sutherlin's post-sentencing conduct. The district court's statements at Sutherlin's sentencing show that it regarded Sutherlin's post-sentencing conduct as a more-than-de-minimis consideration. According to the court:

> Since [Sutherlin's] conviction he has continued to be a productive and a hard working citizen working to resurrect his father's aviation sales business prior to reporting to prison. He has not had any additional trouble with the law while on release and since incarceration he has had no disciplinary problems. He has also organized a Bible study group and has worked hard to keep regular contact with his wife and daughter.

(JA 1314-15.)

Because the record does not disclose the precise extent to which the district court relied on its positive assessment of Sutherlin's post-sentencing conduct, we remand the case for re-sentencing in light of *Worley*.

2.        *Other Factors Underlying the District Court's Sentencing Decision*

We also briefly address the Government's arguments that the district court improperly considered Sutherlin's youth in imposing sentence and that the district court failed to ensure that Sutherlin's sentence was not disparately lenient compared to Keller's. First, we decline to hold that the district court erred in basing its sentencing decision in part on Sutherlin's youth and his susceptibility to Keller's influence. Given the facts of this case, these do not strike us as irrelevant sentencing considerations. *Davis*, 458 F.3d at 498 (stating that "age . . . may indeed be a legitimate basis for a variance"). As the district court explained, Sutherlin was only 17 when he began working for Kelco and 21 when most of the fraudulent activity occurred; Sutherlin was persuaded to drop out of college by Keller, who trained him in every aspect of his job; Keller reinforced whatever verbal suasion he employed by providing Sutherlin with an important title (Vice President of Kelco) and an annual six-figure salary; and Sutherlin's limited working life had been spent entirely at Kelco, thereby possibly depriving him of additional experiences that might have averted his fraudulent conduct.

As to the issue of sentencing disparity, any reduction the district court may see fit to grant Sutherlin need not precisely mirror that granted to Keller. Although their criminal conduct was similar, the record shows that there are good reasons why the district court may regard Keller as less deserving of lenience than Sutherlin—Keller was the mastermind and ultimate decisionmaker behind the fraud, he has never expressed remorse or taken responsibility for his actions, he apparently fled the country in the wake of his conviction and original sentence, and he has only involuntarily paid restitution from funds seized by the Government.

Our decision today expresses no views about the reasonableness of a 36-month sentence for Sutherlin's criminal conduct, nor does it prevent the district court from varying below the Guidelines if, after applying all the § 3553(a) factors and excluding consideration of Sutherlin's conduct since his original sentencing, the court deems such a below-Guidelines penalty "sufficient, but not greater than necessary" to effectuate the goals of sentencing. *See United States v. Borho*, 485 F.3d 904, 912 (6th Cir. 2007) ("A dramatic downward variance . . . is not per se or even presumptively unreasonable."); *Davis*, 458 F.3d at 500 (stating that, on remand, the district court "retains ample discretion to grant [the defendant] a variance"). On remand, should the district court again sentence Sutherlin below the Guidelines minimum, its task is to explain why that variance is appropriate

given the § 3553(a) factors and the defendant's individual characteristics. Of course, "the farther the judge's sentence departs from the guidelines sentence[,] the more compelling the justification based on factors in [§] 3553(a) must be." *Davis*, 458 F.3d at 496 (internal ellipses and quotation marks omitted).

## C.    Keller's Sentence

In Keller's case, the advisory Guidelines yielded a sentencing range of 168 to 210 months of imprisonment. The district court, however, granted Keller a downward variance, sentencing him to 120 months. Keller argues on appeal that (1) his sentence is procedurally unreasonable, (2) the district court improperly refused to consider his argument regarding the calculation of losses attributable to his conduct, and (3) his sentence is substantively unreasonable.

### 1.    *The Procedural Reasonableness of Keller's Sentence*

Keller claims that his sentence is procedurally unreasonable because the district court gave no indication that it considered the arguments he made for a lower sentence, including "(1) disparity, (2) sale of contestable policies, (3) viatication helped people, (4) age and first offender status, (5) productive life, (6) supportive family, (7) consecutive sentence, and (8) restitution." (Keller's Br. 6-7.) Keller provides no explanation whatsoever as to what these issues mean or what he said about them at his sentencing hearing that the district court ignored. We think that it would be proper to conclude that Keller has waived his procedural-reasonableness challenge by his failure to adequately present it to this Court. *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) ("[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."), *cert. denied*, 127 S. Ct. 48 (2006). However, because the record enables us to assess independently whether the district court sufficiently considered the § 3553(a) factors and provided a reasoned explanation for the sentence it imposed, we will proceed to the merits of Keller's procedural-reasonableness challenge.

The record shows that the district court explicitly took account of Keller's "productive life" and "supportive family" and treated these as bases for its downward variance. The court stated that Keller "is a good family man, he is well-liked by a lot of people" and that Keller "is a hard worker, he's bright, articulate." (JA 1301.) Moreover, the court entertained extensive argument from Keller's counsel on the need to impose a sentence that would not be disparate relative to Sutherlin's sentence, on how Keller's status as a first-time offender warranted a reduced sentence, and on how Keller paid more than $600,000 in restitution, even though he had not done so voluntarily. The court also heard the testimony of witness Gary Johnson, who described how Keller's purchase of his two life-insurance policies enabled Johnson to improve substantially his economic condition.

We have previously stated that "[w]here a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). The purpose of requiring the district court to articulate its reasons for the sentence it imposes is to "enable this court to engage in a meaningful reasonableness review of the sentence." *United States v. Jones*, 445 F.3d 865, 871 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 251 (2006). However, we have also held that district courts need not explicitly address every argument a defendant raises at sentencing, no matter how non-meritorious or unsupported. *See e.g., id.* at 871 (concluding that a sentence is not unreasonable "whenever a district judge does not explicitly address every defense argument"); *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006) ("A sentencing judge has no more duty than we appellate judges do to discuss every argument made by a litigant; arguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence.") (internal quotation marks omitted), *cert. denied*, 127 S. Ct. 3065 (2007).

As described above, the record shows that the district court did consider several of the factors that Keller contends it did not, including Keller's age and first-offender status, the productive life he has led, and his supportive family. As to certain of the other issues Keller raises, we conclude that the district court was under no obligation to specifically address them. For instance, it borders on the frivolous to suggest that the district court should have explained why Keller was not entitled to a lower sentence on the grounds that "viatication helped people" (assuming that this refers to Johnson's testimony about how Keller's purchase of his policies enabled him to regain his financial footing), when Keller had been convicted for engaging in *fraudulent* viatication practices that resulted in tens of millions in losses. Similarly, there would have been no point to the court discussing "restitution" as grounds for a further variance where the record is clear that Keller had not willingly paid anything in restitution, and that the $600,000 of Keller's assets that was applied toward his restitution obligation was done so only because the Government seized that money when Keller fled the country.

To be sure, although the district court's statements at sentencing suggested reasons why Keller did not merit as steep a variance as Sutherlin, it would have been appropriate for the court to directly explain why Keller's sentence is not disparate to that imposed on Sutherlin. As Keller points out, after his and Sutherlin's initial sentencing hearings, there was only a 17-month gap in their respective prison terms, but after they had been re-sentenced, there was an 84-month gap, without any changes in the operative facts underlying their criminal conduct. We are not persuaded that the district court's failure to expressly address on the record Keller's disparity argument renders Keller's sentence procedurally unreasonable. We have repeatedly intoned that "a district court need not provide 'a rote listing or some other ritualistic incantation of the relevant § 3553(a) factors.'" *United States v. McGee*, __ F.3d __, 2007 U.S. App. LEXIS 16385, *14 (6th Cir. July 11, 2007); *see also Rita v. United States*, ___ U.S. ___, 127 S. Ct. 2456, 168 L. Ed. at 219 (acknowledging that the district judge "might have said more," but holding that the "judge's statement of reasons was brief but legally sufficient"); *United States v. Liou*, __ F.3d __, 2007 U.S. App. LEXIS 17232, *15-17 (6th Cir. July 20, 2007) (concluding that the sentence imposed by the district court was not procedurally unreasonable but that "the better practice, post-*Rita*, is for a sentencing judge to go further and explain why he has rejected each of the defendant's nonfrivolous arguments" for imposing a below-Guidelines sentence) (internal quotation marks and brackets omitted).

### 2.  *The Substantive Reasonableness of Keller's Sentence*

Keller argues that his sentence is substantively unreasonable because it is disparate relative to Sutherlin's sentence. We disagree. Given that Keller engineered and directed the fraud; that he has never taken responsibility for his actions or expressed remorse; that he apparently continues to protest that he is a victim of an overzealous Government prosecution; and that, as the Government put it at Keller's sentencing, Keller brought "other people into the scheme, people who might otherwise have not been involved in criminal behavior," it seems clear that the district court would have been well within its discretion in imposing a sentence within the Guidelines range. It therefore would be anomolous to conclude that Keller's substantially varied sentence is substantively unreasonable. As to his claim of a disparity relative to Sutherlin's sentence, that disparity, if it exists, should be addressed at Sutherlin's re-sentencing. It is not grounds for remanding Keller's sentence.

### 3.  *Keller's Loss-Calculation Argument*

Keller claims that at his re-sentencing, the district court was obligated to consider his objection to the court's loss calculation. But, on appeal, Keller does not dispute the district court's conclusion that any such argument has been waived because Keller did not raise it in his initial appeal to this Court. Moreover, to the extent that Keller argues that the amount of loss should have been found by the jury under the beyond-a-reasonable-doubt standard, rather than the district judge,

this argument is foreclosed: Post-*Booker*, "district judges can find the facts necessary to calculate the appropriate Guidelines range." *Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006).

## III. CONCLUSION

For the reasons set forth above, we **VACATE** the district court's judgment imposing a 36-month sentence on Sutherlin and **REMAND** for re-sentencing, and **AFFIRM** the district court's imposition of Keller's 120-month sentence.