**NOT RECOMMENDED FOR PUBLICATION**
File Name: 08a0317n.06
Filed: June 2, 2008

**NO. 07-5316**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

EUGENE W. CLOWERS

      Defendant-Appellant.

                               /

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

BEFORE: GUY, SUHRHEINRICH, and COLE, Circuit Judges.

**SUHRHEINRICH, Circuit Judge.** Eugene Clowers ("Clowers") pleaded guilty to one count of enticing a minor to engage in sexually explicit conduct in order to produce a visual depiction, in violation of 18 U.S.C. § 2251(a). The district court sentenced Clowers to 360 months' imprisonment, the statutory maximum. On appeal, Clowers argues that the district court erred in its assessment of criminal history points and that his sentence is substantively unreasonable. For the reasons that follow, we **AFFIRM**.

## I. BACKGROUND

On January 17, 2004, Ashley Bennett ("Bennett"), then a seventeen-year-old minor female, was reported missing from her residence in Estill Springs, Tennessee. Tennessee authorities pursued an investigation, and soon came to believe that Clowers, a friend and business associate of Bennett's father, was residing with Bennett in Columbia, South Carolina.

On January 30, 2004, local authorities in South Carolina arrested Clowers on statutory rape

charges pursuant to a Tennessee arrest warrant. Upon arrest, Clowers indicated that Bennett was at a local shopping mall, where she was found without incident.

On February 2, 2004, local authorities searched Clowers's residence, and seized numerous videotapes and photographs of suspected child pornography. One videotape contained footage of Clowers engaging in sexual activity with Bennett. A portion of this tape depicted Bennett bound in handcuffs and a rope, blindfolded and nude, while Clowers fondled her; another portion of the video depicted Bennett performing oral sex on Clowers. Authorities also seized a videotape containing footage of Clowers digitally manipulating the vagina of a ten-year-old girl during a bath while forcing the girl to hold his penis; the video also showed Clowers's penis positioned near the mouth of the same girl while she was sleeping in a chair.

On February 4, 2004, Clowers was interviewed by a local investigator. During the interview, Clowers admitted that he had broadcasted video over the internet of Bennett performing oral sex on him. Clowers also identified the ten-year-old girl from the seized videotape as his niece.

On March 5, 2004, Bennett was interviewed by investigators. Investigators showed her a still photograph taken from a seized videotape, and she identified herself, Clowers, and the location depicted in the videotape. She stated that she and Clowers became intimately involved during the summer of 2003 when she was seventeen years old. She told investigators that her father was a business associate of Clowers, who frequently instructed her to accompany Clowers on various business errands because he was encouraging her to form a relationship with Clowers. She also stated that she ran away from home because her father had been inappropriately touching her. She called Clowers asking for help in leaving Tennessee, and in January of 2004, Clowers drove her to his apartment in Columbia, South Carolina.

Bennett told investigators that on one occasion, Clowers blindfolded her while she was naked, tied her hands above her head, and videotaped her while fondling her. On another occasion, Clowers set up a web camera and broadcasted video in an internet chat room of Bennett performing oral sex on Clowers. Clowers also videotaped Bennett and himself engaging in sexual intercourse and oral sex on two other occasions during the summer of 2003. Although she never viewed any of the videotapes of herself, Bennett told investigators that Clowers showed her videos of individuals engaging in group sex.

Three computers seized during the search of Clowers's apartment were examined in a computer laboratory. A computer program recovered 1,017 deleted images from one of the computers. Through this technique investigators recovered hundreds of deleted images depicting nude minor children in various non-sexual poses, four images depicting minor females engaged in sexual acts, and eleven videos depicting minors engaged in sexual acts. On another computer, investigators located a large number of images and videos depicting minors engaged in sexual acts.

Investigators interviewed Angela Mangrum, Clowers's sister and the mother of Clowers's niece who was depicted in the seized videotape. Mangrum told investigators that her daughter informed her of the incident depicted on the videotape two years after its occurrence. She also told investigators that she and her younger brother were abused by Clowers as children. She stated that Clowers had threatened to kill her and her brother, while displaying guns and martial arts weapons, if either of them told their parents about Clowers's abuse.

Investigators also interviewed Kendra Sebastian, a former girlfriend of Clowers. Sebastian stated that she began seeing Clowers when she was fourteen years old, when Clowers was ten years her senior, and was involved in a sexual relationship with Clowers for about one to one and a half

years. She told authorities that on various occasions she was forced to have sex with Clowers and other men under threats of violence. She also stated that on one occasion, Clowers performed oral sex on her younger sister, who was twelve or thirteen years old at the time.

On July 22, 2004, Clowers pleaded guilty in South Carolina state court to two counts of Sexual Exploitation of a Minor in the Second Degree, in violation of S.C. Code Ann. § 16-3-655. He was sentenced to 5 years' imprisonment on each charge, with the sentences to run concurrently. On August 28, 2006, Clowers was released to federal authorities pursuant to a federal detainer.

On April 25, 2006, Clowers was indicted in federal court on two counts of enticing a minor to engage in sexually explicit conduct in order to produce a visual depiction, in violation of 18 U.S.C. § 2251(a).[1] On October 18, 2006, Clowers pleaded guilty to the first count pursuant to a plea agreement with the United States.

On February 4, 2007, the parties appeared for sentencing. Clowers raised various arguments concerning the computation of his criminal history score, which were rejected by the district court. Clowers also raised an objection as to whether he committed certain conduct described in the section of the PSR entitled "Offense Behavior Not Part of Relevant Conduct." The district court allowed him to file a brief outlining those objections.

On February 28, 2007, Clowers filed his brief with the court. He disputed that he had "forced or used threats to accomplish the sexual acts" described by Angela Mangrum in her statement to authorities, and emphasized that the sexual activities "took place approximately thirty years [prior]

---

[1]The first count charged that the visual depiction was transported from Tennessee to South Carolina by means of the internet. The second count charged that the visual depiction was transported from Tennessee to South Carolina by means of interstate travel from Tennessee to South Carolina.

when [Clowers] was approximately eleven years old." Clowers further denied "all allegations of force or the threat of force" by his former girlfriend, Kendra Sebastian, denied arranging for her to have sex with other men, and denied the sexual incident regarding Sebastian's sister. Clowers admitted that child pornography was on his computers, but stated that he did not know the number of the images, and that they most likely were "uploaded by various third-party internet users" onto his "server which he owned for his internet service company."

On March 7, 2007, the sentencing hearing resumed, and the district court took up Clowers's factual objections. The district court informed Clowers that he was entitled to have a jury resolve the disputed information in the PSR, which Clowers waived. The Government presented testimony by Angela Mangrum and Kendra Sebastian. Upon the conclusion of their testimony, the district court made factual findings crediting their testimony. The district court computed Clowers's offense level as 24, which, together with a criminal history category of IV, resulted in a Guidelines range of 76-96 months. The district court found, however, that the advisory Guidelines sentence is "embodied" in the statutory mandatory minimum sentence, which is 180 months under 18 U.S.C. § 2251(e). After applying the § 3553(a) factors, the district court found that a sentence higher than the Guidelines sentence was warranted. Clowers received a sentence of 360 months' imprisonment, the statutory maximum, to be followed by a life term of supervised release.

## II. ANALYSIS

### A. Standard of Review

In our review of sentences on appeal, we first determine whether the sentence was procedurally reasonable, and then whether it was substantively reasonable. *See Gall v. United States*, 128 S.Ct. 586, 597 (2007); *United States v. Smith*, 517 F.3d 473, 476 (6th Cir. 2008). We review

-5-

sentences for an abuse of discretion. *Gall*, 128 S.Ct. at 597. "A sentence may be procedurally unreasonable if the district court did not appreciate the non-mandatory nature of the guidelines, did not correctly calculate the sentencing range under the guidelines, or did not consider the § 3553(a) factors." *United States v. Phinazee*, 515 F.3d 511, 514 (6th Cir. 2008) (internal citation and quotation marks omitted). "A sentence may be considered substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Keller*, 498 F.3d 316, 322 (6th Cir. 2007) (internal quotations and citation omitted). "In reviewing a challenge to the length of an outside-guidelines sentence, we may 'take the degree of variance into account and consider the extent of a deviation from the Guidelines.'" *Smith*, 516 F.3d at 477 (quoting *Gall*, 128 S.Ct. at 595). "But in applying abuse-of-discretion review, we 'must give due deference to the district court's decision that the § 3553(a) factors . . . justify the extent of the variance.'" *Smith*, 516 F.3d at 477-78 (quoting *Gall*, 128 S.Ct. at 597).

## B. Procedural Reasonableness

Clowers challenges the district court's assessment of six criminal history points under U.S.S.G. § 4A1.1(a), as well as the district court's assessment of two criminal history points under U.S.S.G. § 4A1.1(d). We need not address any alleged error in the district court's calculation of Clowers's criminal history points, however, because the district court determined the correct Guidelines sentence. A violation of 18 U.S.C. § 2251(a) requires a mandatory minimum sentence of 180 months, 18 U.S.C. § 2251(e), and U.S.S.G. § 5G1.1(b) provides that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum will be the guideline sentence." Thus, the applicable Guidelines

sentence was 180 months, the statutory mandatary minimum. The district court was correct when it noted that the Guidelines sentence was "embodied" in the statutory mandatory minimum. *See United States v. Barnes*, 49 F.3d 1144, 1150 (6th Cir. 1995); *United States v. Washington*, 112 Fed. App'x 501, 505 (6th Cir. 2004) ("[T]his Court will not address an alleged error in the offense level if the mandatory minimum penalty trumps the guideline range.").

The record indicates that Clowers's sentence was free of procedural error, given the district court considered several relevant § 3553(a) factors and the appropriateness of a variance. The district court considered the applicable 180-month advisory Guidelines sentence, *see* § 3553(a)(3)-(5) ("I have to consider the Guidelines, which, of course, in this case are embodied in the statutory minimum, mandatory-minimum sentence."); *United States v. Hunt*, 521 F.3d 636, 652 (6th Cir. 2008) ("The district court [] satisfied § 3553(a)(3)-(5) by correctly calculating the recommended guidelines range."). The district court also considered providing needed correctional treatment, *see* § 3553(a)(2)(D) ("It's recommended that the defendant be designated to FCI Butner, North Carolina, so that he may participate in the Bureau of Prisons sex offender treatment program."). The district court considered Clowers's history and characteristics, *see* § 3553(a)(1) ("The defendant's history can be summed up in one word, reprehensible. And I think that may not be strong enough. There were other victims here, I've determined here, besides Ashley Bennett. And these are the defendant's siblings, and as well as others. The defendant has left some badly damaged young people in his wake."). The district court considered just punishment, *see* § 3553(a)(2)(A) ("[T]here is a crying need here to provide just punishment . . . . [Clowers]'s computer contained . . . over 1,000 images actually of child pornography in addition to 11 [] videos. And, of course, this was not just a downloading case. He was going to transmit these images on the internet. The offense of

conviction and the Guidelines do not themselves reflect the heinousness of what the defendant did.").

Finally, the district court considered protecting the public, *see* § 3553(a)(2)(C) ("The multiple sexual activity with Ms. Sebastian demonstrates that the defendant used violence and threats. These facts demonstrate that the public needs protection from further crimes of the defendant.").

Given that the district court calculated the correct Guidelines sentence, and demonstrated its detailed consideration of several of the § 3553(a) factors, we find no procedural error.

**C. Substantive Reasonableness of 360-Month Sentence**

Clowers argues that his sentence is substantively unreasonable on three grounds: (1) the district court gave too much weight to the evidence of Clowers's sexual abuse of his siblings and Kendra Sebastian; (2) the district court did not adequately consider the benefits of treatment; and (3) the sentence is disproportionate to other offenses.

**1.**

We first dismiss Clowers's blanket contention that his sentence was unreasonable because "it is undisputed that the underlying offense did not involve violence." Clowers's characterization of his offense conduct is inaccurate, because his conduct included the production of a videotape of Bennett in which she was "bound in handcuffs and a rope, blindfolded and nude while Clowers fondled her." Furthermore, the district court never relied on any finding or assumption that the underlying offense involved violence in fashioning its sentence. Instead, the district court considered Clowers's past history of violence in weighing the sentencing factor concerning the need "to protect the public from further crimes of the defendant." *See* § 3553(a)(2)(C). Although a district court need only find facts used to sentence a defendant at sentencing on a "preponderance of the evidence" standard, *see States v. Klups*, 514 F.3d 532, 537-38 (6th Cir. 2008), the district court found "beyond

a reasonable doubt" several facts that justified its weighing of § 3553(a)(2)(C).

The district court heard Angela Mangrum's testimony that Clowers regularly threatened her and her brother with physical harm, even using a drill at one point on her younger brother's arm, and that she feared Clowers would physically harm her if she did not engage in sexual acts with her younger brother, with Clowers, and with Clowers's friends. After hearing Mangrum's testimony, the district court found beyond a reasonable doubt that Clowers threatened Mangrum with violence and used force to compel sexual activity with her.

The district court also heard Kendra Sebastian's testimony that when she was fifteen years old, Clowers threatened her at gunpoint when she told him that she wanted to end their relationship. She testified that Clowers forced her to have sex hundreds of times, and would cut her with razor blades if she would not have sex with other men in Clowers's presence–which she was forced to do on ten to fifteen occasions. She also testified that Clowers performed oral sex on her then twelve-year-old sister, and had her sister perform oral sex on the defendant. After hearing Sebastian's testimony, the district court found that Clowers "use[d] force and threats, at least part of the time, to compel [sexual] activity . . . . [Clowers] used such things as razor blades, knives and guns to make those threats. Mrs. Sebastian at this time was only fourteen or fifteen."

The district court essentially found that Clowers had a decades-long history of committing violent or otherwise deviant sexual acts against several victims. Accordingly, the district court was justified in weighing § 3553(a)(2)(C) in favor of a sentence significantly longer than that provided by the Guidelines.

**2.**

Clowers's contends that the district court failed to adequately consider the benefits of

treatment, a contention which we reject. Clowers states in his brief that "the evidence suggests that [Clowers], contrary to the district court's assumptions, had made significant progress in reforming the most serious aspects of his alleged behavior and that any violent tendencies or temptations had been eliminated." At oral argument, however, counsel for Clowers conceded that no evidence in the record supports this contention.

The only evidence regarding Clowers's potential treatment response is the psychological assessment report referenced in the PSR. The report concluded that Clowers "is in a group that is considered potentially treatable," but also that Clowers was highly likely to recidivate. According to one measure for risk for reoffending, the testing clinician assessed a recidivism rate of twenty-six to thirty-six percent. The report contradicts Clowers's belief that treatment would necessarily be beneficial. In any event, the district court considered § 3553(a)(2)(D) when it recommended that Clowers participate in the Bureau of Prisons sex offender treatment program. Accordingly, we find no merit to Clowers's argument concerning § 3553(a)(2)(D). *Cf. United States v. Allman*, 119 Fed. App'x 751, 755 (6th Cir. 2005) (stating that "[o]nly exceptional rehabilitation can support a downward departure").

**3.**

Clowers also argues that his "sentence of 360 months was disproportionate to his offense and factually similar offenses." However, Clowers provided no argument to support the contention that his sentence resulted in an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). Furthermore, this Court has explained that in applying this sentencing factor, "*unwarranted* disparities in sentencing is what should be avoided, *not* those that are warranted." *United States v. Phinazee*, 515 F.3d 511, 520 (6th

-10-

Cir. 2008) (emphasis in original). As we explained above, the district court appropriately weighed § 3553(a)(2)(C) (concerning the need to protect the public) in favor of a longer sentence.

We note that Clowers would have been subject to a higher offense level under the 2004 Amendments to the Guidelines. U.S.S.G. § 2G2.1 now provides for a base offense level of 32, and Clowers would have received an additional eight-level increase under U.S.S.G. § 2G2.1(b). *See* U.S.S.G. § 2G2.1(b)(2)(A) ("If the offense involved . . . the commission of a sexual act or sexual contact, increase by 2 levels."); U.S.S.G. § 2G2.1(b)(3) ("If the offense involved distribution, increase by 2 levels."); U.S.S.G. § 2G2.1(b)(4) ("If the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, increase by 4 levels."). Clowers's total offense level would have been 37 (after a three-point reduction for acceptance of responsibility), resulting in an advisory Guideline range of 292 to 365 months. His 360-month sentence would be squarely within that range, and presumptively reasonable under *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007). Thus, Clowers's sentence would not be disproportionate to defendants charged with the same offense conduct under the current version of the Guidelines. *See United States v. Springer*, 28 F.3d 236, 238 (1st Cir. 1994) ("What matters is that [the defendant] will be treated the same as *all* those convicted of the same offense at the same time, regardless of when they are sentenced. This is consistent with the concerns of Congress and the Guidelines' goal of uniformity.") (emphasis in original) (citing § 3553(a)(6)).

Because the district court adequately considered the § 3553(a) factors, and did not accord any undue weight to any one factor, we find that the district court did not abuse its discretion in sentencing Clowers.

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** Clowers's sentence.