NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0434n.06
Filed: July 21, 2008

No. 07-3217

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LUTHER WILLIAMS, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: GILMAN and COOK, Circuit Judges; and COHN,* District Judge.

COOK, Circuit Judge. Following a *Booker* remand that resulted in the same 235-month maximum-Guidelines-range sentence for heroin conspiracy, Luther Williams advances procedural and substantive challenges to his sentence. In addition, he argues that the Fifth Amendment's Due Process Clause proscribes the district court's preponderance-of-the-evidence finding that he distributed more than three kilograms of heroin. Because the district court imposed a reasonable sentence and because judicial factfinding at sentencing does not violate a defendant's right to due process, we affirm.

I.

---

*The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

Over the course of at least three trips, Williams transported heroin from New York City to Cincinnati for distribution. An informant tipped the Regional Enforcement and Narcotics Unit (RENU) to Williams's activities, and RENU agents arrested Williams in an apartment as he was packaging freshly transported heroin for individual sales.

The Government charged Williams with two counts: conspiracy to possess with intent to distribute heroin (Count One), and—for the unsold drugs he had on the day of his arrest—possession with intent to distribute in excess of one kilogram of heroin (Count Two). Ultimately, he pleaded guilty to Count One in exchange for the Government's promise to forgo prosecuting Count Two and other potential money-laundering offenses.

After accepting Williams's guilty plea, the court found that he transported more than three kilograms and sentenced him at the top of the applicable range. Williams's appeal secured a limited *Booker* remand from this court, but sentencing under the newly advisory Guidelines resulted in the same sentence.

In addition to arguing that his sentence is generally unreasonable, Williams targets several alleged problems with the district court's judgment, urging that the district court ignored his age, understated his employment history, overstated his criminal history, overestimated his likelihood of recidivism, and disregarded his post-sentencing rehabilitative conduct. He also says the court violated his Fifth Amendment right to due process when it found the three-kilogram quantity by a mere preponderance of the evidence.

No. 07-3217
*U.S. v. Williams*


II.


A. *Reasonableness Challenges*


Although Williams does not categorize his sentencing arguments, we read them to make both procedural and substantive complaints.  To review sentences, we first determine whether the district court committed any "significant procedural error," then "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *United States v. Gall*, 128 S. Ct. 586, 597 (2007).


1. *Procedural Error*


*Gall* discusses several examples of procedural errors, and Williams targets "failing to adequately explain the chosen sentence" and "selecting a sentence based on clearly erroneous facts." *Id*.  To adequately explain a sentence, a judge need only "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own decision-making authority," but "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007).


Williams contends that the district court summarily discounted his age and mischaracterized his employment history. When invited by the court to offer objections to the sentence, Williams neither pressed the court to explain why his age did not sway it nor argued that the court unfairly

characterized his work history, so we apply plain error review to his procedural-unreasonableness claims.

a)  *Age*

First, Williams argues that the district court disregarded his age when it dismissed the argument with one bare reference to his 51 years.  We cannot fault the district court for giving this factor short shrift.  Advisory Guidelines policy instructs that "[a]ge . . . is not ordinarily relevant in determining whether a departure is warranted" unless "the defendant is elderly and infirm and . . . a form of punishment such as home confinement might be equally efficient as and less costly than incarceration."  U.S.S.G. § 5H1.1.  Williams argues that he should be released at age 65 instead of age 70 because he will be "infirm" by age 65, but the PSR indicates that Williams is in good health for the time being, making Williams's argument too speculative to show plain error on that basis alone.

Even putting health issues aside, Williams persists,  his age deserved consideration because studies confirm that recidivism decreases with age.  Williams cites data from a Sentencing Commission report indicating that only 41.1% of 51-year-old defendants in his criminal history category reoffend.  *See* U.S. Sentencing Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 28 (2004), *available at* http://www.ussc.gov/publicat/Recidivism_General.pdf.  Although the *average* 51-year-old Category VI offender may not return to crime, sentencing mandates individualized assessments.  Williams's

crimes actually escalated as he got older, undermining the inference he draws from the Sentencing Commission's report. *See United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006) (rejecting a defendant's argument that his likelihood of recidivism would decrease with age, given his particularly violent history).

Moreover, Williams contends that the district court's judgment fails to appreciate that a lengthy incarceration will deprive him of the chance to prove his rehabilitation through legitimate employment, yet he does not explain how his employment prospects will differ materially if he is released at age 65 instead of age 70.

b) *Employment History*

Williams argues that the district court slighted his work experience when it stated that "Mr. Williams has no verifiable substantial work history" and that he showed "unwillingness or inability to maintain any substantial legitimate employment." J.A. 97–98. He argues that his three-year track record maintaining his mother's properties in exchange for $100 to $150 per week and free rent, together with "various temporary jobs in the building trades area," amounts to a substantial work history. *See* J.A. 118. Given that Williams's mother was the only person to verify his maintenance work and that Williams provided no specifics about his "temporary jobs," the district court did not unfairly characterize his work history, especially given that Williams had reached middle age by the time of sentencing. Williams himself told the court, "[U]p until this point in my life [the period of incarceration between his sentencing and resentencing], I've never had regular employment." J.A.

60.

The district court explained that Williams's sketchy work history made him more prone to recidivism. J.A. 97–98. That is, if released without a sufficiently deterrent punishment, Williams would likely return to a criminal livelihood, as he had done in the past. *See* U.S.S.G. § 5H1.9 ("The degree to which a defendant depends upon criminal activity for a livelihood is relevant in determining the appropriate sentence.").

c) *Explanation of Sentence*

Williams challenges as deficient the district court's explanation of his sentence, but our review of the sentencing transcript confirms that the district court addressed all of the 18 U.S.C. § 3553(a) factors. Of the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," *id.* § 3553(a)(2)(A), the district court observed that Williams "committed a Class A felony, which is the most serious category of offense, and consequently a significant term of imprisonment is required to reflect the seriousness of this offense and to impose an appropriate punishment." J.A. 98. The district court noted "Williams's drug abuse history, extensive criminal history and unwillingness or inability to maintain any substantial legitimate employment," despite his earning an associate's degree. These traits marked him a likely recidivist, requiring the court "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). In addition, the court acknowledged an earlier rehabilitation program that Williams completed, but found that he needed "aftercare follow-up" so he would not "revert to the use of

controlled substances." J.A. 97; *see* 18 U.S.C. § 3553(a)(2)(D). Finally, the court stated that

"protecting the public from further crimes of the defendant and deterrence should be the main goals

in fashioning an appropriate sentence for Mr. Williams." J.A. 98; *see* 18 U.S.C. §§ 3553(a)(2)(B),

(C).

The district court explained Williams's sentence, as well as its rejection of his mitigating

arguments as required; we find no procedural error, plain or otherwise, to persuade us to disturb his

sentence. *See United States v. Vonner*, 516 F.3d 382, 386 (2008) (en banc); *see generally* Fed. R.

Crim. P. 52(b).

### 2. *Substantive Error*

Williams's remaining sentencing arguments implicate substantive unreasonableness. "A

sentence may be substantively unreasonable where the district court selects the sentence arbitrarily,

bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives

an unreasonable amount of weight to any pertinent factor." *United States v. Liou*, 491 F.3d 334, 337

(6th Cir. 2007) (internal quotations and brackets omitted). This court reviews the length of sentences

"under a deferential abuse-of-discretion standard." *United States v. Bolds*, 511 F.3d 568, 578 (6th

Cir. 2007) (quoting *Gall*, 128 S. Ct. at 591). Because the Sentencing Guidelines are the product of

"the Sentencing Commission['s] examin[ation of] tens of thousands of sentences and work[] with

the help of many others in the law enforcement community over a long period of time," *Rita*, 127

S. Ct. at 2464, within-Guidelines sentences are afforded a presumption of reasonableness, *see United*

*States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *see also Vonner*, 516 F.3d at 389.

Williams complains that the sentence weighed his criminal history too heavily, given "the dreary, but typical, pattern that a low-level drug-addict can acquire: crimes involving relatively small amounts of property and crimes involving the possession of drugs." Appellant's Br. 15. But cumulatively, the crimes made Williams a Category VI offender—the highest offender category—and Kentucky considered him a "Persistent Felony Offender." Although Williams describes himself as a non-violent offender and points out that he did not have a weapon when he was arrested, his history is not without dangerous offenses. For one thing, Williams pleaded guilty to armed robbery in Kentucky. For another, he fled from police three separate times, triggering this court's recognition that fleeing, eluding, and escape "create[] a conspicuous potential risk of injury to pedestrians, vehicles sharing the road, passengers in the fleeing car and the pursuing officer." *United States v. Martin*, 378 F.3d 578, 582 (6th Cir. 2004). Given this history, "it was reasonable for the district court to place substantial weight on [his] criminal history in reaching its sentencing determination." *United States v. Webb*, 403 F.3d 373, 384 (6th Cir. 2005).

Williams next insists that the sentence over-penalizes him for the seriousness of his offense. *See* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary . . . ."). Williams argues that he deserved a lower Guidelines sentence because he sold drugs as a small-scale activity to support his drug habit. Undermining this argument, the district court considered that drug proceeds also supported buying a BMW, fur coats, and jewelry—the

subjects of a later forfeiture action.

Nor did the district court double-count the nature of his offense by commenting on the "resurgence of heroin in society." This statement actually comes from Williams's first sentencing hearing, not his *second* sentencing hearing. Regardless, because § 3553(a) specifically requires the district court to impose a sentence that will "reflect the seriousness of the offense," among other factors, the district court could—and, indeed, is encouraged to—comment on the nature of the offense. 18 U.S.C. § 3553(a)(2)(A).

Next, Williams urges the view that the district court took incomplete account of his "history and characteristics," *id.* § 3553(a)(1), by declining to consider his post-sentencing rehabilitative conduct. Our *United States v. Worley*, 453 F.3d 706, 709–10 (6th Cir. 2006), which held that considering post-sentencing conduct unfairly benefits a defendant who has the good fortune of a *Booker* remand, defeats this argument as do many decisions after *Worley* reinforcing its sound policy. *See, e.g.*, *United States v. Sexton*, 512 F.3d 326, 333 (6th Cir. 2008) ("[T]he district court was not permitted to consider the defendants' post-sentencing conduct for purposes of *Booker* resentencing."); *United States v. Keller*, 498 F.3d 316, 324 (6th Cir. 2007) ("[C]onsideration of post-sentencing factors is incompatible with the limited scope of a *Booker* remand.").

Having determined that the district court did not overemphasize the seriousness of Williams's offense, that it reasonably characterized Williams's criminal history as serious, and that it properly refused to consider Williams's post-sentencing conduct, we find no abuse of sentencing discretion.

B. *Due Process Challenge*

Williams argues that the Fifth Amendment guarantees defendants the right to have sentencing facts found beyond a reasonable doubt, rather than by a preponderance of the evidence, and this due process interest attaches because of the threat to a defendant's liberty. The district court declined to hear this challenge, barring it under the mandate rule because Williams never objected to the quantity finding during his first appeal. Even Williams agreed, "[U]nder these circumstances I can't expect the Court to re-evaluate my offense level," J.A. 89, and defense counsel conceded that "bring[ing] this stuff up right now puts the government in a tough position," J.A. 88.

As the district court properly ruled, the mandate rule left it "without authority to expand its inquiry beyond the matters forming the basis of the appellate court's remand." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). Complementing the mandate rule, "this Court [generally] lacks authority to consider any issues on appeal that were beyond the scope of the limited remand." *United States v. Robinson*, 503 F.3d 522, 527 (6th Cir. 2007). Here that forecloses Williams's plea that we entertain further challenges to prevent "serious injustice" and take account of changed legal authority wrought by *Rita*, 127 S. Ct. 2456. The mandate rule bars Williams's due process challenge, but even if the claim were properly before the court, we would find that it lacks merit.

III.

We affirm Williams's sentence.